Charles Anthony SHERFIELD, Appellant,

v.

The STATE of Oklahoma, Appellee.

Thomas Roy HENDRIX, Appellant,

v.

The STATE of Oklahoma, Appellee.

Nos. A–16773, A–16774.

Court of Criminal Appeals of Oklahoma.

June 14, 1973.

Jeff L. Hirzel, Staff Atty., Legal Aid Society, Oklahoma City, for appellants.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Ray Parks, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellants, Charles Anthony Sherfield and Thomas Roy Hendrix, hereinafter referred to as defendants, were convicted in the District Court of Oklahoma County, Case No. CRF–71–443, of Second Degree Rape and each sentenced to five (5) years imprisonment on April 5, 1971. At the time of their conviction, the defendants were juveniles, being fifteen years of age, and were certified for criminal prosecution as adults by the Juvenile Division of the District Court of Oklahoma County, Case No. JF–71–8 (Sherfield) and Case No. JF–71–9 (Hendrix). In this appeal defendants claim the juvenile court certification process was defective and further claim the provisions of the Juvenile Act,

10 O.S. § 1112, providing for certification of juveniles for criminal prosecution as adults, is unconstitutional.

Defendants were taken into custody of the Juvenile Court by virtue of a complaint that they had forcibly raped a sixteen year old girl on January 1, 1971. On January 5, 1971, the district attorney filed in the Juvenile Court an "Application to Certify Juvenile to be Prosecuted as an Adult," alleging that the defendants had committed the offense of Second Degree Rape and alleging that each defendant had "sufficient mental capacity to know the difference between right and wrong and the consequences of his acts." On January 15, 1971, the Juvenile Court ordered each defendant committed to Central State Griffin Memorial Hospital "for the purpose of determining by observation whether or not said child is mentally ill." On February 3, 1971, Dr. Loraine Schmidt, M.D., court case consultant at the hospital, wrote the Juvenile Court a letter concerning defendant Sherfield stating that upon completion of "psychiatric evaluation" it was found that Charles Sherfield "is not mentally ill according to the laws of the State of Oklahoma. He is able to distinguish between right and wrong and is capable of advising an attorney in his own defense. Charles' capacity to comprehend the nature and quality of his behavior is consistent with his chronological age of fifteen." On the same date Dr. Schmidt sent the court an identical letter concerning Thomas Hendrix.

On February 19, 1971, a hearing was held in the Juvenile Court on the State's application to certify defendants for trial as adults. The defendants were present and represented by counsel, Wendell Wrightman and Jeff Hirzel, of the Legal Aid Society. At the hearing a female juvenile, age sixteen, testified that on January 1, 1971, during the early morning hours, Sherfield, Hendrix, and two other males had sexual intercourse with her against her will and without her consent. Counsel for Sherfield and Hendrix cross-examined the

complaining witness and called Lucretia Hendrix, mother of the defendant Hendrix, whose testimony tended to impeach the complaining witness. The complaining witness' mother was then called as a rebuttal witness by the State. Dr. Schmidt's letters stating her psychiatric evaluations were admitted into evidence.

In opposition to certification defense counsel argued that there were no guidelines for the proper exercise of discretion by the Juvenile Court and that the statutory provisions for certification were unconstitutionally vague. The Juvenile Court, Judge Stewart Hunter, replied that the hearing alone was perhaps not sufficient to exercise his jurisdiction and thereupon the judge reviewed "all the files" relating to the defendants. The judge summarized defendant Hendrix' contacts with the Juvenile Court which began three years before in 1968. There had been complaints against Hendrix for shoplifting, riding with an unauthorized driver of a stolen vehicle, burglary, and truancy. The Juvenile Court had previously placed Hendrix on probation in the custody of his mother, but the probation had been revoked and he was confined to the Boley State School for Boys. As to Sherfield, there were complaints against him beginning in 1966 for shoplifting and disorderly conduct, which resulted in his being committed to the Taft State Home. Thereafter, while on probation, a complaint against Sherfield for theft returned him to his mother's custody under the supervision of the Department of Public Welfare.

In consideration of these factors the record of the juveniles, their psychiatric evaluation, and the testimony at the hearing, the Juvenile Court judge waived the exclusive jurisdiction of the Juvenile Court over Sherfield and Hendrix and certified them for prosecution as adults in the District Court. On April 5, 1971, while represented by the public defender, the defendants entered a plea of guilty and were each sentenced to five (5) years imprisonment.

We granted certiorari. Title 22 O.S.1971, § 1051.

The governing statute, 10 O.S.1971, § 1112, provides in relevant part:

"(a) Except as hereinafter provided, a child who is charged with having violated any State statute or municipal ordinance shall not be tried in a criminal action, but in a juvenile proceeding in accordance with this Act . . .

"(b) If a child is charged with delinquency as a result of an offense which would be a crime if committed by an adult, the court, after full investigation and a preliminary hearing, may in its discretion continue the juvenile proceeding, or it may certify such child capable of knowing right from wrong and to be held accountable for his acts, for proper criminal proceedings to any other division of the court which would have trial jurisdiction of such offense if committed by an adult."

As to the specifics of defendants' challenge, it is first contended that the Juvenile Court did not require a full investigation into the background of defendants, thus failing to comply with requirements of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Defendants argue that "a mere statement by a psychiatrist, Dr. Schmidt, is not a full investigation," thus defendants' certification was improper under § 1112 and constitutional due process requirements.

As we read Kent v. United States, supra, the United States Supreme Court held that under the District of Columbia Juvenile Court Act providing for the Juvenile Court to waive jurisdiction over a juvenile after full investigation, as a condition to a valid waiver order, the juvenile was entitled as a matter of due process to a hearing, with counsel, including access by his counsel, to the social records and similar reports which might be considered by the court, and to a statement of reasons for the Juvenile Court's decision. The relevant statute in the *Kent* case and the Okla-

homa Statute both require a "full investigation" before waiver by the Juvenile Court of its jurisdiction.

However, the factors which lead the Supreme Court to find a due process violation in *Kent* are not present in the case before us. In *Kent* the "Juvenile Court judge did not rule on [defense] motions. He held no hearing. He did not confer with petitioner or petitioner's parents or petitioner's counsel . . . He made no findings. He did not recite any reason for the waiver." 383 U.S. at 546, 86 S.Ct. at 1049.

■ In contrast, in this case the Juvenile Court Judge, Stewart M. Hunter, waived his jurisdiction and certified Sherfield and Hendrix for prosecution only after a full hearing, assisted by counsel, with the right of confrontation, with testimony by witnesses for the State and the juveniles, and with proper notice to the parents prior to the hearing. Before waiver, the Juvenile Court judge reviewed the rather extensive record of the defendants in their prior contacts with the Juvenile Court. The judge did not act until he had the benefit of a psychiatric evaluation. After hearing full argument by both sides, the judge acted on each of defendants' motions and did so with careful deliberation. The judge's reasons for his rulings and findings were stated in the record and supported by the evidence. We are of the opinion that the waiver and certification by the juvenile judge satisfied due process requirements as outlined in *Kent*. There is no hint of summary, arbitrary, or prejudicial waiver. Furthermore, there was no request by counsel for Sherfield or Hendrix for further investigation by the Juvenile Court, nor suggestion as to nature of further investigation. We are satisfied the full investigation and hearing requirements of § 1112 were met in this case.

■ Defendants next contend the waiver and certification was in error absent evidence of the juveniles' advanced emotional maturity, that is, maturity above and beyond their chronological age of fifteen.

Defendants argue a juvenile, whose age places him under the protection of the Juvenile Act, "is presumed to be incapable of committing crime" and that if the State does not establish that a fifteen year old juvenile's "behavioral pattern is greater than or above that of is fellow fifteen year olds, then certification of the juvenile must be denied." We read no such requirement in the provisions of the Juvenile Act.

At the outset we note that the Juvenile Act does not specify who is "capable" of committing crimes. Who is capable of committing crimes is governed by Title 21.

■ Under the Juvenile Act, a juvenile or child under its auspices is not declared incapable of committing a crime. The Juvenile Act establishes a necessary procedure before such a juvenile or child may be prosecuted for a crime. It is not a matter of capacity to commit a crime, rather it is a question or jurisdiction. A juvenile above the age of fourteen is presumed to have the legal capacity to commit a crime, but no court would have jurisdiction to try such a juvenile until there had been a waiver and certification by the juvenile court. Correspondingly, even after certification by a juvenile court of a juvenile under the age of fourteen, in his criminal trial it would be incumbent upon the State to overcome the presumption of the child's incapacity established by Title 21.

The contention that before there can be a proper certification there must be a showing that the juvenile had advanced emotional maturity and a behavioral pattern greater than his chronological age is, in our view, without foundation in the provisions of the Juvenile Act. Section 1112 merely provides the Juvenile Court "may certify such child capable of knowing right from wrong, and to be held accountable for his acts." We find no mention of emotional maturity and no indication the child's behavioral pattern must exceed that of his chronological age. Advanced emotional maturity is not the statutory criteria for certification.

It is next contended that § 1112(b) of Title 10 is vague, arbitrary, discriminatory and therefore unconstitutional. This constitutional attack is premised on four propositions: (1) Section 1112(b) permits the district attorney to arbitrarily prosecute selected juveniles in a discriminatory manner; (2) the "right from wrong" test need not be determined with relation to any specified age; (3) there are no statutory guidelines to govern certification; and, (4) the reasons for certification need not be stated.

■ We find no merit to the argument that § 1112(b) is discriminatory because the district attorney has the discretion to seek waiver and certification of juveniles for criminal prosecution. Under our system of criminal justice the district attorney has been vested with the power to prosecute those persons whom he deems have committed criminal violations. In the case of a juvenile or child under the auspices of the Juvenile Act, the district attorney must first seek and secure waiver and certification from the Juvenile Court. Criminal prosecution must be initiated by some official and that official is the district attorney. There is nothing whatsoever to indicate that the district attorney has used this power in the instant case in a discriminatory manner which would affront due process and equal protection requirements.

■■ The claim of constitutional infirmity because the statute "does not state whether the juvenile is to know right from wrong as an eight, twelve, or twenty-one year old" implies the ability to know right from wrong must be tested against a reference of a specified chronological age. The statute makes no such requirement and we find none derived from the constitutional concepts of due process or equal protection. Defendants claim vagueness since the statute does not establish a set age or level of emotional stability and maturity before certification is proper. In our view, the absence of such an age and emotional standard does not render the statute vague or arbitrary. The Juvenile Court must determine if a juvenile, for whom certification is sought, understands right from wrong and is accountable for his acts. This is a personal test applied to a particular juvenile, based on his demonstrable ability. There is no constitutional basis to require that the juvenile know right from wrong as would a nineteen or twenty-one year old person. In our judgment the Constitution does not require determination of right from wrong with reference to a particular age.

■ There is some validity to the assertion that the statute is lacking in meaningful guidelines to govern waiver and certification. The Juvenile Court judge in the instant case remarked in the certification hearing that the statute "does not set forth specific guidelines" and places with the judge a "wide discretion." However, we do not find that the statute is so void of standards as to render it unconstitutional.

■ The standards for certification stated in § 1112(b) is whether such juvenile or child is "capable of knowing right from wrong, and to be held accountable for his acts." Neither this standard nor any other standard was present in the Juvenile Court statute questioned in the *Kent* case. Nevertheless, the Supreme Court in *Kent* did not feel such absence rendered the Juvenile Court statute unconstitutional. Rather, the Court found Kent's certification unjustified by the record. In our view the standard presently found in § 1112 is sufficient to meet constitutional requirements, particularly if it is supplemented with the standards or determinative factors set out in the appendix of Kent v. United States, supra, 383 U.S. at 566–569, 86 S.Ct. 1045. We adopt these guides and recommend their use by juvenile courts when waiver and certification of a juvenile for a criminal prosecution is sought. These guidelines are set forth as an appendix to this opinion.

■ Lastly, defendants urge that "due process would dictate that the reasons for the juvenile being certified as an adult be given" by the Juvenile Court judge. We

find that the reasons for waiver and certification of Sherfield and Hendrix were stated in the record. After hearing testimony concerning the alleged crime, the psychiatric evaluation, and Hendrix's prior juvenile record, the Juvenile Court judge "taking all this into consideration" certified Hendrix. The Court did likewise with Sherfield and certified him "since he was an actor in this [rape] and took an active part in this latest charge." The judge did not prepare a formal statement of reasons for his certification order, but his reasons are apparent from the record. It might be well in the future for juvenile court judges to prepare and file a statement of reasons for certification and waiver in view of the language in *Kent,* supra, that "it is incumbent upon the juvenile court to accompany its waiver order with a statement of reasons or considerations therefor." Although informal, such a "statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review." 383 U.S. at 561, 86 S.Ct. at 1057.

We find that the reasons for certification of Sherfield and Hendrix by the Juvenile Court are apparent from the record, that these reasons satisfy the statutory requirements, and that the record is adequate to permit a meaningful review. Thus, we conclude that constitutional requirements have been met and that this assignment of error is without merit.

Accordingly, the judgment and sentence is hereby affirmed.

BLISS, P. J., and BUSSEY, J., concur.

APPENDIX

The determinative factors which will be considered by the Judge in deciding whether the Juvenile Court's jurisdiction over such offenses will be waived are the following:

1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

4. The prosecutive merit of the complaint, i. e., whether there is evidence upon which conviction would be obtained.

5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with the crime.

6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

7. The record and previous history of the juvenile, including previous contacts with law enforcements agencies, juvenile courts and other jurisdictions, or prior commitments to juvenile institutions.

8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court.

It will be the responsibility of any officer of the Court's staff assigned to make the investigation of any complaint in which waiver of jurisdiction is being considered to develop fully all available information which may bear upon the criteria and factors set forth above. Although not all

604

such factors will be involved in an individual case, the Judge will consider the relevant factors in a specific case before reaching a conclusion to waive juvenile jurisdiction and certify the juvenile for trial.