OPINION OF THE COURT
Theodore G. Barlow, J.
The codefendants, Mason and Riley, have been indicted for the crimes of robbery in the first degree (Penal Law, § 160.15) and robbery in the second degree (Penal Law, § 160.10), each as a juvenile offender. At the time of the alleged commission *584 of the crimes charged, Mason was 14 years old and Riley was 15 years old.
Both defendants have requested that this court declare the statutory scheme, under which they were indicted, unconstitutional and to dismiss the indictment. Defendant Mason requests, in the alternative, that he be granted youthful offender status and that the case be remanded to the Family Court. Defendant Riley requests that the charges be reduced by the court to robbery in the third degree and that the case be remanded to Family Court where the defendant would be treated as a juvenile offender.
Chapter 481 of the Laws of 1978 was approved on July 20, 1978, sections 1 through 60 to become effective on September 1, 1978. The legislation amended the Penal Law, the Criminal Procedure Law, the Family Court Act and the Executive Law, and the legislation, in part, made 13, 14 and 15 year olds criminally responsible for certain enumerated felonies (see Penal Law, § 10.00, subd 18; § 30.00). The crimes with which these defendants are charged, to wit: robbery in the first degree (Penal Law, § 160.15) and robbery in the second degree (Penal Law, § 160.10, subd 2), are felonies for which 14 and 15 year olds are criminally responsible.
The defendants contend that the legislation is unconstitutional in that it deprives them of consideration for youthful offender treatment. They argue that since 16-, 17- and 18-year-old defendants, who are convicted of the same crimes that these defendants are charged with, are eligible for such treatment, subject to certain limitations, the statutory scheme is violative of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution, as depriving these defendants of the equal protection of the laws.
Defendant Mason contends that a fundamental right has been violated since the State acted against a certain class without reason and that the cutoff between 15 and 16 year olds is arbitrary. Both defendants quote the following language from People v Drayton (39 NY2d 580, 584): "The youthful offender provisions of the Criminal Procedure Law emanate from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals.” Defendant Mason concludes that the Legislature has singled out 13, *585 14 and 15 year olds for punishment and has elected to treat the younger defendants more harshly and that the distinction is arbitrary.
Defendant Riley further argues that the court should apply the strict scrutiny test in an equal protection analysis since the fundamental right of the defendant’s liberty is involved. He also contends that the law is discriminatory in that juvenile offenders are subject to specific minimum periods of incarceration greater than others and that adult offenders may plea bargain and receive probation in certain cases, while the juvenile offender must serve a mandatory prison term upon conviction.
The People oppose dismissal of the indictment on the grounds that it is the sentencing statute which is challenged and not the statute setting forth the substantive crime. The People also point to the strong presumption of constitutionality which acts of the Legislature possess and the fact that there are certain procedures for "removal” of juvenile offender cases to the Family Court. The Attorney-General has been given notice pursuant to section 71 of the Executive Law and CPLR 1012 (subd [b]) and has submitted memoranda of law in opposition to the defendants’ motions.
The court notes that both defendants have pleaded not guilty and that the constitutional issues raised in the moving papers primarily are concerned with sentencing. However, it appears that both defendants have generally challenged the legislative scheme which requires that they be prosecuted as adults. The court, in its discretion and in the interests of justice, will consider all points raised by counsel at this time.
Upon due consideration, the defendants’ motions are denied in all respects.
When faced with a claim of denial of equal protection the court must decide upon the appropriate standard of review to be applied in examining the challenged statute or statutes.
Traditionally, there has been a two-tiered approach to equal protection analysis. The first test involves determining if a reasonable relationship exists between the legislative purpose and the challenged classification. If a reasonable basis is found, the classification "does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.’” (Dandridge v Williams, 397 US 471, 485; see, also, Alevy v Downstate Med. Center, 39 NY2d 326.)
*586 The second test commonly is referred to as the "strict scrutiny” test. This test is employed if a classification is deemed to be "suspect” or if a "fundamental interest” is involved. "Identified as suspect are classifications based on alienage, natural origin and race. Fundamental interests include voting, travel, procreation, the right of free speech, the right of a criminal defendant to appeal and perhaps, the right of privacy.” (Citations omitted.) (Alevy v Downstate Med. Center, supra, p 332.) The strict scrutiny test, as its name suggests, requires the court to ascertain whether the challenged legislation is promoting a compelling State interest.
It also should be noted that the New York State Court of Appeals has formulated a middle ground test applicable in certain situations in lieu of either traditional test (see Alevy v Downstate Med. Center, supra, p 336). Such a test looks at whether a classification promotes a "substantial” State interest rather than a "compelling” one.
The court is of the opinion that the strict scrutiny test is not the proper standard for review of the challenged juvenile offender legislation. This classification does not rest on race, national origin or religion. As defendant Mason concedes, age has not been held to be a suspect classification.
The other prong of the strict scrutiny test is concerned with whether a fundamental interest or right is involved. The main argument set forth by the defendants is that they have been denied equal protection in that they are not eligible for youthful offender treatment as are those who are 16, 17 and 18 years of age. However, youthful offender treatment is not a fundamental right. "There is no constitutional right to youthful offender status and such treatment is entirely a gratuitous creature of the Legislature subject to such conditions as the Legislature may impose without violating constitutional guarantees.” (People v Drayton, 39 NY2d 580, 584; see, also, United States v Rombom, 421 F Supp 1295.) The defendant Riley asserts that the fundamental right in question is "liberty.” Such an assertion does not withstand analysis. A deprivation of liberty would occur only upon the defendant’s conviction of a crime for which he is criminally responsible. If there is no constitutional right to youthful offender treatment, a defendant cannot assert a valid claim of denial of liberty, if he is sentenced in accordance with the law.
The court also is not persuaded that a middle ground test, as articulated in Alevy (39 NY2d 326, supra), is appropriate. *587 In Alevy (supra) the Court of Appeals was deciding a case concerned with "reverse discrimination.” In issue was a preferential treatment policy based on race. In the case at bar, the classification is not a racial one nor does it approach the level of any of the other traditional suspect classifications.
The proper analysis rests in the traditional rational basis approach; i.e., whether the juvenile offender legislation and specifically the authorized disposition and sentencing provisions thereof (Penal Law, § 60.00, subd 2; §§ 60.10, 70.05) are based on some conceivable and valid State interest (see People v Drayton, 39 NY2d 580, 585, supra, and cases cited therein).
An articulated purpose of the Penal Law is: "To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted, and their confinement when required in the interests of public protection” (Penal Law, § 1.05, subd 5). The amendments to the Penal Law that chapter 481 of the Laws of 1978 effected, reflect this objective. "There is generally a very strong presumption that 'the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation’ ” (Matter of Taylor v Sise, 33 NY2d 357, 364). Undoubtedly, the Legislature considered the incidence and severity of crime among this age group. It is not the court’s role to decide whether the legislation is wise but only to decide the legal issue of its constitutionality (see People v Davis, 43 NY2d 17). As a general rule, only in rare cases should courts of first instance declare acts of the Legislature unconstitutional. (National Psychological Assn. for Psychoanalysis v University of State of N. Y., 18 Misc 2d 722, affd 10 AD2d 688, affd 8 NY2d 197, app dsmd 365 US 298.) Furthermore, section 150 of Statutes (McKinney’s Cons Laws of NY, Book 1) states, in part: "Courts of ñrst instance. A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty, and where the invalidity of the act is apparent in its face.”
The Legislature has not acted arbitrarily or capriciously in establishing the juvenile offender category. While the potential punishment may, in some instances, be more severe than that imposed upon 16-, 17-, or 18-year-old defendants in *588 that youthful offender status is unavailable, there are also ameliorative provisions in this legislation which are designed to protect the juvenile. There are provisions in the challenged legislation which provide for removal of the case to the Family Court under certain conditions (see CPL 180.75, subd 3, par [b]; subd 4, pars [a], [b]; CPL 190.71, 220.10, subd 5, par [h]; 310.85, subd 3; 330.25; art 725). In addition, the Legislature has provided that juvenile offenders are to be confined in separate facilities (see CPL 510.15; Executive Law, § 515-b).
It is clear, therefore, that the Legislature enacted a body of law specifically tailored to juvenile offenders. Certain aspects of the legislation provide benefits to the juvenile offender which are not available to other groups. Furthermore, the juvenile offender possesses all of the basic rights available to the adult offender such as preliminary proceedings, bail and counsel. Defendant Riley contends that the limitations placed upon plea bargaining deny him equal protection of the laws. The States, however, "may prohibit the practice of accepting pleas to lesser included offenses under any circumstances” (North Carolina v Alford, 400 US 25, 39).
The State, in an attempt to promote public safety and to deter crime, has made juveniles criminally responsible for certain enumerated felonies, those felonies being of a type which present a threat to the safety of the citizens of the State. The legislation, which gives effect to this objective, is both rational and reasonable and any discrepancies in treatment which result do not amount to a denial of the equal protection of the laws under the Federal and State Constitutions. As Mr. Justice Holmes stated in a dissenting opinion in Louisville Gas & Elec. Co. v Coleman (277 US 32, 41): "When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.”
*589 The court has examined the defendants’ other and finds them to be without merit. contentions