STATE of Oklahoma, ex rel. Andrew M. COATS, District Attorney, Seventh Judicial District, Petitioner,

v.

The Honorable Sandra JOHNSON, Special District Judge, Seventh Judicial District, State of Oklahoma, Respondent.

No. P–79–50.

Court of Criminal Appeals of Oklahoma.

June 21, 1979.

Andrew M. Coats, Dist. Atty., David H. Hardwicke, Asst. Dist. Atty., Oklahoma County, for petitioner.

John C. Moran, Oklahoma City, for respondent.

Jim Pearson, Asst. Public Defender, Oklahoma County, amicus curiae.

## OPINION

BRETT, Judge:

On January 29, 1979, the respondent, Seventh Judicial District Judge, Sandra Johnson, declared 10 O.S.Supp.1978, §§ 1104.2 and 1112(b), unconstitutional on the grounds (1) that the statutes deny equal protection of the law; (2) that Section 1112(b) creates a constitutionally impermissible presumption that 16 and 17-year-olds accused of serious crimes should be treated as adults; (3) that the statutes impermissibly shift the burden of persuasion on the question of whether a 16 or 17-year-old accused of a serious crime should be treated as a juvenile or as an adult; and (4) that the statutes are unconstitutionally vague. Pursuant to 22 O.S.Supp.1978, § 1053.1, the petitioner filed in this Court an application to assume original jurisdiction on a reserved question of law.[1]

In light of our holding on the question of vagueness, we shall not make a detailed analysis of the other constitutional infirmities raised. That the statute has a valid interest in protecting its citizens from young people who commit violent crimes few would deny. Whether a penal statute against 16 and 17-year-olds need only be

1. The District Judges and Associate District Judges of the Seventh Judicial District adopted a rule requiring that an advisory panel of judges determine the validity of any statute, the constitutionality of which is raised in that District. On February 28, 1979, a panel of judges appointed under that rule declared 10 O.S.Supp.1978, §§ 1104.2 and 1112(b), uncon-stitutional on the grounds (1) that the statutes are procedurally vague; (2) that the classification created in the statutes does not bear a substantial relationship to the purpose of the legislation; and (3) that the statutes rest upon an invalid presumption regarding the competence of 16 and 17-year-olds accused of serious crimes.

rationally related to that legitimate State interest (*Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 [1957]) or whether such a statute must meet the test of strict scrutiny, i. e., that it be narrowly drawn to protect a compelling State interest because juveniles are a "suspect class" (*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 [1976]) is more open to debate.

The case before us involves a youth against whom probable cause has been found that he committed robbery with a dangerous weapon. Whether the facts shown at the hearing at which the statutes were declared unconstitutional actually showed prosecutive merit to the charge is not before us; nor is the question of whether any of the other enumerated crimes in Sections 1104.2 and 1112(b) would meet the applicable equal protection test. Nevertheless, whichever test is applicable, that robbery with a dangerous weapon if committed by an adult is punishable by a maximum sentence of life imprisonment (21 O.S.Supp. 1978, § 801), is indicative of the gravity with which society and the Legislature view its commission. Even using the strict scrutiny test, it would seem that protecting society from youthful armed robbers would be a compelling state interest. Whether or not the statutes are narrowly enough drawn is a question which we need not answer.

The respondent next ruled that Section 1112(b) created a constitutionally impermissible presumption that 16 and 17-year-olds accused of serious crimes should be treated as adults. The panel of judges held that the amendment created an invalid presumption of competence. The amicus curiae brief stresses that *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and 10 O.S.Supp.1978, § 1112, with the exception of subsection (b), create a presumption of incompetence to stand trial in persons under 18. We fail to find that presumption in the statute, in *Kent*, or in any of our cases. In fact, the only Oklahoma statute we can find dealing with the incompetence of children to commit crimes is 21 O.S.1971, § 152, which provides that children under 7 years are incapable of committing crimes and that children over 7 and under 14 are incapable of committing crimes in the absence of proof that at the time of committing the act or neglect charged against them, they knew of its wrongfulness. Nor do we find that the amendments create a presumption of a fact which by law must be proven before a 16 of 17-year-old can be tried as an adult. We do not need at this point to determine whether somewhere implicit in the United States Constitution is the requirement that for purposes of criminal prosecution, a person must be treated as a juvenile until he is 18, as both sides submit that had the Legislature wished it, it simply could have chosen to define juveniles as anyone under 16.

Third, the respondent ruled that the amendments to the statutes impermissibly shift the burden of persuasion to the juvenile on the question of whether he should be treated as a juvenile or as an adult, an argument based on the holding of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), that the State must prove each and every element of a crime beyond a reasonable doubt. Without discussing the question in any detail, we note that the later case of *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), refused to extend the holding in *Mullaney* to affirmative defenses.

Finally, the respondent ruled that Sections 1104.2 and 1112(b) are unconstitutionally vague. With that ruling we must agree. Since it became effective on October 1, 1978, Oklahoma's reverse certification statutes have been interpreted at various times to create concurrent juvenile and felony division jurisdiction, to vest initial exclusive jurisdiction in the felony division, to confer discretion on the prosecutor to determine where to file, and to create exclusive initial juvenile division jurisdiction. There is some justification for each of the four interpretations.

First, 10 O.S.Supp.1978, § 1101(a), did not change the definition of child as "any person under the age of eighteen (18) years."

Title 10 O.S.Supp.1978, § 1112(a), states that "Except as hereinafter provided," children shall be tried in juvenile proceedings rather than in criminal actions. That would indicate that proceedings would start in juvenile court, and that in order for the child to be tried as an adult, the juvenile court would still have to waive jurisdiction and certify the child.

On the other hand, Section 1104.2 uses the words "charged," "preliminary hearing," and "defendant" in referring to a 16 of 17-year-old charged with one of the 11 enumerated crimes. These words ordinarily are used in adult criminal prosecutions and not in juvenile proceedings. Furthermore, that statute indicates that the prehearing detention options are not available to such juveniles. That of course leaves the question of whether or not the juvenile accused of one of the enumerated crimes is entitled to a 10 O.S.Supp.1978, § 1107, detention hearing.

Another problem is that Section 1104.2 refers to certifying a "defendant" as a child to the juvenile division, whereas Section 1112(b) refers to certifying a child as an adult. Section 1104.2 also refers to serving the child with a "certified copy of information," and it says that upon arrest and detention, such a 16 of 17-year-old shall have all the statutory and constitutional rights and protections of an adult accused of a crime. From those Sections, we are unable to determine whether a 16 of 17-year-old accused of one of the 11 enumerated crimes should seek to have bond set in juvenile court or in the criminal division of the District Court.

Further, Section 1112(b) refers to mandatorily certifying a child as an adult after the court has found that "probable cause" exists to believe that he is guilty of one of the 11 enumerated crimes. We are unable to determine whether that is a reference to prosecutive merit during the first stage of a certification hearing or if that means a finding of probable cause on preliminary hearing.

We cannot glean from the statutes what procedures are required if a 16 of 17-year-old is accused of one of the 11 enumerated crimes; nor can we determine what are the rights and responsibilities of either the State or of accused juveniles. For this Court to determine what it thinks would be an acceptable procedure, would not be a matter of interpretation of the statute but would rather be an exercise in judicial legislation. We cannot rewrite the statute on the pretext of construction. See *Lingo-Leeper Lumber Co. v. Carter*, 161 Okl. 5, 17 P.2d 365 (1932). Therefore, we hold that 10 O.S.Supp.1978, § 1104.2 and § 1112(b) are void and without effect.

We therefore uphold the ruling of the respondent and decline to issue a writ of mandamus or in the alternative a writ of prohibition.

CORNISH, P. J., specially concurs.

BUSSEY, J., specially concurs.

BUSSEY, Judge, specially concurring:

While I disagree with the Respondent's holdings in the lower court that (1) the provisions at issue deny equal protection of the laws, (2) Section 1112(b) creates an impermissible presumption of competency and (3) the provisions regarding certification, I must concur with my colleague, Judge Brett, in holding unconstitutional the provisions of 10 O.S.Supp.1978, §§ 1104.2 and 1112(b), for the reason that they are unconstitutionally vague.

CORNISH, Presiding Judge, specially concurring:

I concur that the statutes are unconstitutional for vagueness. But after a thorough study of the issues presented, I would hold, in addition, the subject statutes create an impermissible presumption having no rational connection to the juvenile's competency to stand trial as an adult.

Prior to the 1978 amendments of those two statutes, the Oklahoma certification process, in my view, complied with Constitutional requirements and provided a viable procedure for determining which juveniles

were to face adult prosecution.[1] The class of juveniles was then defined as: "The term 'child' means any person under the age of eighteen (18) years." Title 10 O.S. Supp.1977, § 1101(a). Numerous privileges and protections were afforded this class by members of the Legislature, including the presumption of incompetency to stand trial as an adult (10 O.S.Supp.1977, § 1112).[2]

With the 1978 amendments a subclass was created which was composed of sixteen and seventeen-year-olds who had been charged with one of eleven enumerated crimes. Members of this subclass had a common basis of difference from the class, i. e., age and severity of the crime. While the Constitution does not deny to states the power to treat separate classes of persons in *different* ways, nevertheless, to uphold the subject statutes as constitutional, that common basis of difference must be "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." See *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), quoting from *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed.2d 989 (1920).[3]

The question presented is whether the difference in age and offense warrants the distinction in accountability to stand trial as an adult. The gravity of these types of crimes and their threat to public safety is demonstrated by their respective prescribed penalties. The apparent purpose of the legislation is the protection of society from juveniles accused of more violent crimes.[4] Another reason suggested for including these individuals in the adult justice system is that it will keep them separated from the less criminally sophisticated juveniles.[5] Finally, there is the political reality that highly visible serious offenses evoke community outrage or fear that only the punitive sanction of an adult conviction can mollify.[6]

The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. Our Juvenile Code specifically articulates this general policy and purpose of the juvenile court system. The major premise of the system is that measures of guidance and regenerative treatment postulated for children should be provided until the juveniles reach a legislatively determined age. Whether to transfer a juvenile from the statutory structure of the Juvenile Court to the criminal processes of the District Court is a critically important decision accompanied by tremendous consequences.

Implicit in the scheme is that noncriminal treatment for juveniles is to be the rule—and adult criminal treatment the exception, which must be governed by a consideration of particular factors in individual cases.[7] It

1. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *J. T. P. v. State*, Okl.Cr., 544 P.2d 1270 (1975).

2. Other protections afforded the class included: The right to a private hearing under 10 O.S. Supp.1975, § 1111; consideration of release to parents under 10 O.S.Supp.1977, § 1107; a stricter admissibility standard for confessions, 10 O.S.Supp.1977, § 1109; and detention alternatives pursuant to 10 O.S.Supp.1977, § 1108.

3. For other cases applying this standard see: *Craig v. Boren*, 429 U.S. 190, 210–211, 97 S.Ct. 451, 463–464, 50 L.Ed.2d 397 (1976); *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 688, 54 L.Ed.2d 618 (1978).

4. The purpose is not directly apparent from the face of the statute and the Oklahoma Legislature does not preserve statutory history materials capable of clarifying the objectives served by its legislative enactments.

5. See note, "Youthful Offenders and Adult Courts: Prosecutorial Discretion v. Juvenile Rights," 121 U.Pa.L.Rev. 1184 (1973).

6. See comment, "Representing the Juvenile Defendant in Waiver Proceedings," 12 St. Louis U.L.J. 424, 437 (1968).

7. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In accord, see *State v. Juvenile Division, Tulsa County District Court*, Okl.Cr., 560 P.2d 974 (1977), and *In the Matter of G. A. M.*, Okl.Cr., 563 P.2d 161 (1977).

appears to me the State seeks to eliminate this consideration in the instant case by the mere accusation of a violent crime, in direct contravention of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

The primary benefit afforded juveniles below the statutory age is the presumption of incompetency to stand trial as an adult. Prior to October 1, 1978, the State had the burden of proof by substantial evidence to overcome this presumption of incompetency.[8]

Then the Legislature in its response to the public outcry against violent crimes, enacted this legislation without the benefit of sufficient empirical data or extensive public hearings—the result being legislation which presumes the competency of every sixteen and seventeen-year-old accused of one of the enumerated crimes, and further presumes all other juveniles within the subclass act out of incompetency when they are accused of a nonenumerated offense.

The power of the Legislature to make proof of one fact evidence of another is limited by the Fourteenth Amendment. The United States Supreme Court substantially defined the constitutional limitations on the use of presumptions in criminal cases in a series of opinions beginning with *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).[9] In *Tot* the Court struck down a provision of the Federal Firearms Act which made it unlawful for any person convicted of a crime of violence to receive any firearm shipped in interstate commerce. Further, possession of a firearm was presumptive evidence that it was received in violation of the Act. In holding the presumption violated due process the Court said:

". . . Under our decisions, a statutory presumption cannot be sustained if there be no *rational connection* between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. . . . But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts." (Emphasis added)

Applying *Tot v. United States,* supra, to the case at bar, what is the rational connection between the basic fact proved (age/offense classification) and the presumed fact (competency)?

In the trial court, the juvenile presented the uncontradicted testimony of Judge Stewart M. Hunter, who for seven years was Presiding Judge of the Juvenile Division of the District Court of Oklahoma County. His testimony was that from his experience, the age of the juvenile and the offense alleged have no relationship to the ability to know right from wrong or the amenability to rehabilitation of a "subclass" member. This witness concluded that the seriousness of a particular crime is of no benefit in deciding whether a particular juvenile possesses sufficient maturity or competency to be held accountable for his acts as an adult.

It is significant to note that the State did not refute Hunter's testimony. Nor does the State attempt on appeal to this Court to show that the common basis of difference between the "class" and "subclass," the age and severity of the criminal offense, has the necessary constitutional relationship to the elimination of the incompetency to stand

---

8. *Matter of G. D. C.,* Okl.Cr., 581 P.2d 908 (1978).

9. For two other cases dealing with the constitutional limits on the creation of presumptions in criminal cases, see *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), and *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965). In *Gainey* the Court sustained the validity of a presumption applying the rational connection test. There, the statute provided that presence at the site was sufficient to convict a defendant of the offense of carrying on the business of distilling without giving bond, unless the defendant explained his presence to the satisfaction of the jury. In *Romano* the Court struck down as violative of the *Tot* principle a presumption of possession of an illegal still from unexplained presence.

trial as an adult. The connection between age/offense and competency is too tenuous and arbitrary to pass constitutional muster. Furthermore, it is not too much to say that the presumptions created by the statutes in question are inconsistent with any argument drawn from accumulated common experience. The parties have not brought to the attention of this Court any available pertinent reports, studies, or compilations of statistics by governmental or nongovernmental agencies, courts, bar associations, etc., for evidence to support or rebut the inferences called for by the statutes. From my research and from an examination of the studies that have been conducted, it appears the seriousness of an offense provides little basis or enlightenment for distinguishing those juveniles who are not susceptible to rehabilitation and are likely to recidivate from those for whom disposition as a juvenile is appropriate.[10]

I am compelled to conclude the presumptions of competency cannot be upheld without making serious incursions into the holdings of *Tot, Gainey,* and *Romano.* These holdings require that it be determined with "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."[11] It cannot be said with substantial assurance that the presumed fact (competency) is more likely than not to flow from the basic proved fact (the age/offense classification). Judged by this standard and the foregoing analysis, I would hold the statutory presumption in issue does not comport with due process and is constitutionally infirm.

Having found the challenged statutes on "reverse certification" unconstitutional, the Legislature might be guided in enacting future legislation concerning the serious juvenile offender. First, the "rational connection test," previously discussed, must be considered in evaluating any proposed legislation. Second, the Legislature, in its urgency to enact legislation in response to the more sophisticated juvenile offender accused of more violent crimes, must recognize that the statute must be more than a procedural shortcut for prosecutors seeking to bring these juveniles to the adult criminal justice system.

Offense exclusion, standing alone, is clearly at odds with the rehabilitative philosophy of the juvenile court that the waiver of juvenile division jurisdiction should be based on findings about the child rather than on findings about the offense. Legislative exclusion on the basis of a present serious offense combined with a consideration of the juvenile's prior record is much more likely to be upheld by the federal appellate courts. To maintain the present classification will invite reversals and retrials of hundreds of cases in the future.

Statutes incorporating an offender's age, present offense, and prior juvenile record classification to determine competency to stand trial as an adult, in my opinion, would meet the requirements of *Tot v. United States,* supra. This approach appears to be more realistic toward identifying the seri-

---

10. For a thorough discussion, see "Reference of Juvenile Offenders for Adult Prosecution: The Legislative Alternative to Asking Unanswerable Questions," by Barry C. Feld, 62 Minn.L. Rev. 515 (1978). This article states that the seriousness of a present offense, plus an extensive prior criminal record, provides a rational predictive basis for certification that is more accurate than any clinical judgment. The author proposes an empirically derived actuarial matrix, excluding offenders with various combinations of present offenses and prior offenses from juvenile court jurisdiction, could be adopted by a legislature, explicitly incorporating the actuarial prediction methods on which the courts implicitly rely in making amenability/dangerousness determinations.

11. See *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), discussed in "The Unconstitutionality of Statutory Criminal Presumptions," 22 Stan.L.Rev. 341, 346 (1970). *Leary* held unconstitutional a statutory presumption that unless satisfactorily explained, possession of marihuana was sufficient to prove the defendant knew the marihuana had been illegally imported into the United States.

For two more recent decisions considering the validity under the Due Process Clause of criminal law presumptions and inferences see: *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

ous and persistent offender and could (1) establish a minimum age at the time of the criminal act as a precondition for adult prosecution and (2) create categories combining different degrees of offense seriousness with different measures of persistence, under which adult prosecution would be mandated. Under these guidelines, as the seriousness of the present offense increases, the number of prior convictions required would decline. As the seriousness of the present offense decreases, the number of prior convictions required for adult prosecution would increase.

Seriousness of the offense would be determined by legislative classifications and authorized penalties. Only offenses committed after a juvenile attained the minimum age would be counted among the offenses included in the prior record. At least one separate involvement in serious misconduct seems necessary to warrant the conclusion that the youth's act requires adult disposition. This would have the effect of legislatively distinguishing between the persistent serious offender and the isolated serious offender.

The Institute of Judicial Administration and American Bar Association, Juvenile Justice Standards Project, Standards Relating to Transfer Between Courts (1977), required a prior adjudication of an offense against the person as a prerequisite for adult prosecution:

> "The juvenile must have been previously adjudicated on charges of threatening or inflicting serious bodily injury. The presumption in favor of juvenile court jurisdiction is strong. Only juveniles who pose genuine threats to community safety should be waived and exposed to the greater sanctions of the criminal court. A *prior record* of violent acts is evidence of that threat." (Emphasis added)

This recommendation might be incorporated in proposed legislation by requiring a prior offense or adjudication that a set number of prior felony adjudications coupled with a present serious offense against the person warrant adult prosecution. Any statutes enacted could attempt to balance lesser offenses, as compared to offenses against the person.

Initially, the prosecutor's decision could be determinative of juvenile or adult court jurisdiction. Upon consideration of the present offense and probable cause to believe the juvenile committed a particular felony, the prosecutor could consult the juvenile's prior juvenile record. If the juvenile's age, present offense, and prior record excluded him from juvenile court jurisdiction, the case could then be transferred for adult prosecution. Further, a statutory provision could be made to transfer the juvenile back to juvenile court where probable cause was found only for a lesser offense, for which the seriousness and persistence did not mandate adult prosecution.

Following these or similar guidelines, adoption of an age/offense/prior record classification could contribute to the rationalization of the dispositional decision-making process. In addition, such a classification could provide a finite outer limit on the length of juvenile court jurisdiction, which would place both the youth and court on notice that continued criminal involvement would eventually lead to prosecution as an adult.

Accordingly, I specially concur with the majority opinion.