The STATE of Oklahoma, ex rel. Andrew M. COATS, District Attorney, Seventh Judicial District, Oklahoma County, Oklahoma, Petitioner,

v.

The Honorable Arthur Lory RAKESTRAW, District Judge, Seventh Judicial District, State of Oklahoma, Respondent.

No. O-80-147.

Court of Criminal Appeals of Oklahoma.

April 21, 1980.

Andrew M. Coats, Dist. Atty., David Hardwicke, Asst. Dist. Atty., for petitioner.

C. Kent Eldridge, Asst. Public Defender, Oklahoma County, for respondent.

## OPINION

BUSSEY, Judge:

Following the motions challenging the constitutionality of Laws 1979, c. 257, §§ 1, 2, and 3—10 O.S.Supp.1979, § 1101(a), § 1104.2, and § 1109(a)—filed by three de-

fendants between 16 and 18 years of age charged separately with Kidnapping, Rape and/or Robbery with Firearms in Oklahoma County District Court Cases CRF–79–4115, CRF–80–0075, and CRF–79–5101, the Honorable Arthur Lory Rakestraw held the certification procedure contained therein unconstitutional. This matter was set for oral argument on the State's application filed in this Court to assume original jurisdiction and prohibit the enforcement of Judge Rakestraw's order. After hearing oral arguments of the respective parties and upon consideration of the briefs submitted, this Court assumes original jurisdiction to determine whether the 1979 amendments to the reverse certification procedure are violative of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and whether they are unconstitutionally vague.

## I—Equal Protection

It is contended that the reverse certification procedure embodied in the provisions of 10 O.S.Supp.1979, § 1101(a), § 1104.2, and § 1109(a), carve out a subclass of the group of all 16 and 17-year-old persons charged with felony offenses and invidiously discriminates against this subclass in violation of the Equal Protection Clause of the Fourteenth Amendment by presuming them to be adults when charged with any of the crimes enumerated in Section 1104.2 and requiring them to file a motion to be certi-

fied as juveniles. It is further contended that the movant has the burden of proof on the question, and under different criteria than that prescribed in the regular, or straight, certification under 10 O.S.Supp. 1979, § 1112(b), where the State bears the burden of proof.

■ It is clear from the statute that the Legislature intended most 16 and 17-year-old persons charged with any of the enumerated offenses should be tried as adults. This is apparent from the different criteria used in making the reverse certification decision—greater weight to be given by the judge to the gravity of the offense charged, and notably absent is consideration of the sophistication and maturity and capability of distinguishing right from wrong and the likelihood of reasonable rehabilitation, both required for regular certification by 10 O.S. Supp.1979, § 1112(b), ¶ 3 and 5. Contrary to the respondent's holding that consideration of these omitted guidelines is required by *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), an examination of *Kent* fails to support this holding, and we expressly reject it.[1]

It is equally clear that in most instances the court will decline to certify the person as a juvenile. The statute is similar to those of some of our sister states in its prescription of adult treatment for juveniles of certain age and offense classifications,[2] but is less conclusive than some of

---

1. Most of the criteria appearing in the regular certification procedure in 10 O.S.Supp.1979, § 1112(b), were taken from those appearing in the appendix to *Kent v. United States*, 383 U.S. at 565, 86 S.Ct. at 1059, which had been adopted by the District of Columbia juvenile court judge because the District of Columbia Juvenile Act did not contain any guidelines, but were later rescinded by the juvenile court. See note 4, 383 U.S. at 546, 86 S.Ct. at 1049.

In *Sherfield v. State*, Okl.Cr., 511 P.2d 598, 600 (1973), we summarized the holding of *Kent* as follows:

"As we read *Kent v. United States*, supra, the United States Supreme Court held that under the District of Columbia Juvenile Court Act providing for the Juvenile Court to waive jurisdiction over a juvenile after full investigation, as a condition to a valid waiver order, the juvenile was entitled as a matter of due process to a hearing, with counsel, including

access by his counsel, to the social records and similar reports which might be considered by the court, and to a statement of reasons for the Juvenile Court's decision. . . ."

Our statement in *S. H. v. State*, Okl.Cr., 555 P.2d 1050, 1052 (1976), relied on by respondent, to wit: "The guidelines set out in *Sherfield*, supra, were mandated by the United States Supreme Court in the case of *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)," was dictum not supported by *Kent*, and we expressly overrule it.

2. Louisiana, La.R.S. 13:1570 A(5); New York, New York Penal Law §§ 10.00(18), 30.00(2); Pennsylvania, 42 Pa.C.S.A. §§ 6322, 6355(e); Maryland, Maryland Code 1957 Courts and Judicial Proceedings Art. 27, § 594A and Code, Courts and Judicial Proceedings § 3–804(d)(1) and (4); District of Columbia, D.C.C.E. § 16–

those, and, hence, more favorable to the accused by affording the possibility of removal from adult to juvenile court. No case has been called to our attention wherein this type of statute has been held unconstitutional but, rather, they have survived equal protection challenges whenever the issue has been raised.[3]

Probably, the Legislature reasoned that the application of 10 O.S.Supp.1979, § 1104.-2, would result in most if not all 16 or 17-year-old persons being tried in criminal court and incarcerated for substantial lengths of time to protect the public. Certainly, implementation should act as a deterrent to those who believe that 16 and 17-year-old persons may violate the law with impunity.

■ In *McGowan v. Maryland*, 366 U.S. 420, 425, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), the Supreme Court of the United States stated the standard for testing equal protection violation claims:

"... Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. ..." (Citations omitted, footnote omitted)

Applying this standard to the statute here involved, we believe that the classification created by the Legislature bears a rational relationship to an important legislative objective, i. e., protection of the public.

2301(3)(A); Delaware, 10 Del.C. §§ 938, 939; Florida, Fla.Stat. § 39.02(5)(C).

## II—Due Process

■ It is next contended that from its inception the juvenile code 10 O.S.Supp. 1979, § 1101, et seq., has conferred a presumption of incompetence to stand trial as an adult on juveniles, whereas 10 O.S.Supp. 1979, § 1101(a), § 1104.2, and § 1109(a), reversed that presumption with regard to 16 and 17-year-olds charged with enumerated crimes, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. However, this contention was laid to rest in *State ex rel. Coats v. Johnson*, Okl.Cr., 597 P.2d 328 (1979). In dealing with an identical argument concerning a similar statute, Judge Brett had this to say:

"The respondent next ruled that Section 1112(b) created a constitutionally impermissible presumption that 16 and 17-year-olds accused of serious crimes should be treated as adults. The panel of judges held that the amendment created an invalid presumption of competence. The amicus curiae brief stresses that *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and 10 O.S.Supp. 1978, § 1112, with the exception of subsection (b), create a presumption of incompetence to stand trial on persons under 18. We fail to find that presumption in the statute, in *Kent*, or in any of our cases. In fact, the only Oklahoma statute we can find dealing with the incompetence of children to commit crimes is 21 O.S.1971, § 152, which provides that children under 7 years are incapable of committing crimes and that children over 7 and under 14 are incapable of committing crimes in the absence of proof that at the time of committing the act or neglect charged against them, they knew of its wrongfulness. Nor do we find that the amendments create a presumption of a fact which by law must be proven before a 16 [or] 17-year-old can be tried as an adult. We do not need at this point to determine whether somewhere implicit in

**3.** See *State v. Sheppard*, La., 371 So.2d 1135 (1979); *People v. Mason*, 99 Misc.2d 583, 416 N.Y.S.2d 981 (Sup.Ct., Richmond County Criminal term, 1979).

the United States Constitution is the requirement that for purposes of criminal prosecution, a person must be treated as a juvenile until he is 18, as both sides submit that had the Legislature wished it, it simply could have chosen to define juveniles as anyone under 16."

## III—Vagueness

■ This leads us to a consideration of the allegation that the statutory amendments are unconstitutionally vague. The test for unconstitutional vagueness is found in *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939), and was expressed as follows:

". . . No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. The applicable rule is stated in *Connally v. General Constr. Co.*, 269 U.S. 385, 391 [46 S.Ct. 126, 127, 70 L.Ed. 322, 328]: 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" (Citations omitted, footnote omitted)

■ Our examination of the statute in question does not reveal that degree of vagueness which necessitated our decision in *State ex rel. Coats v. Johnson*, supra. But, to the contrary, the terms are clear and explicit and any supposed inconsistency may be judicially determined when the necessity for judicial construction arises.

For all the above and foregoing reasons, the Honorable Arthur Lory Rakestraw is directed to vacate her order of the 6th day of March, 1980.

CORNISH, P. J., dissents.

BRETT, J., concurs specially.

BRETT, Judge, specially concurring:

I have examined the law cited by the respondent in the written opinion of March 18, 1980, in support of the holding that the new reverse certification statute denies equal protection to persons charged under it. I concur with Judge Bussey that this statute does not deny equal protection.

The respondent's written opinion recites that legislative classification must not be arbitrary and that it must rest upon a differentiation that is fairly and reasonably related to the objective of the legislation, so that all similarly situated persons will be treated equally. *Royster Guano Company v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). However, in *Royster*, the United States Supreme Court also held that the equal protection guarantee does not prohibit the states from exercising wide discretion in creating legislative classifications. In *Royster*, the Court looked at legislation for taxing corporations in Virginia. There was no rational basis for distinguishing between corporations that did business within the state and those that did not in determining their exempt status for paying taxes on out-of-state income; and so the statute was struck down.

In 1942, the United States Supreme Court also struck down a sterilization law aimed at preventing the inheritance of criminal propensities, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655. Because the right being infringed upon was one of privacy and procreation, the Court applied the fundamental rights-strict scrutiny test, finding that the discrimination between the classes of criminals who were candidates for sterilization and those who were immune was not supported by a compelling state interest.

The distinction between *Skinner* and the respondent's expressed view is obvious. In *Skinner*, the classification infringed upon a fundamental right and, when examined in

light of the strict scrutiny of the Court, it could not pass. The objective of the reverse certification statute as expressed in the respondent's opinion is to define out of the juvenile code individuals of a particular age who are charged with one of a number of crimes. Since there is no constitutional guarantee that certain persons will have access to the juvenile system, the classification need pass only the rational basis test, as defined in *Royster.*

If we believe that the Legislature is constitutionally authorized to define certain persons out of the juvenile code, and we do, then we must apply the rational basis test to that classification to determine its constitutionality. We find that there is a rational connection between the crimes listed as committed by the included ages and the intended purpose of protecting society. We do not agree with the respondent that all other 16 and 17-year-old persons who commit unlisted felonies are "similarly situated." Neither do we find the choice of crimes to be arbitrary. The Legislature is afforded discretion, and it is obvious that the crimes listed are serious felonies. It is not this Court's duty to ascertain the "wisdom" of legislation, but only its constitutionality.

I would also suggest that the procedure outlined in 10 O.S.Supp.1979, § 1104.2 B and C should be adhered to with studious detail. Although the statute indicates that the magistrate is not required to detail his responses to each of the four considerations pertaining to reverse certification, those magistrates who wish to preserve their record for meaningful review are advised to interpret this requirement in light of *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The review standard of *Kent* is appropriate here, which is not to suggest the applicability of the *Kent* criteria. Therefore, the magistrate's order

should include a statement of the reasons for granting or denying the waiver set forth "with sufficient specificity to permit meaningful review." *Kent v. United States,* supra, 86 S.Ct. at 1057.

Finally, my examination of the statutes indicates that the review of reverse certification by this Court, if any, would only come at the time of the regular appeal in the event of conviction. As I perceive the statutes, there is no provision for the accused person to appeal from the refusal to certify that person to juvenile court nor by the State from an order certifying the person to juvenile court. Admittedly, should the State reserve a question of law for appeal, that would fall within the provisions of 22 O.S.Supp.1979, § 1053. Likewise, as stated above, in the event of conviction, the magistrate's action may be reviewed on appeal.

CORNISH, Presiding Judge, dissenting:

In an unusual procedure, a panel of three District Judges, in a 2 to 1 decision, issued a twelve page opinion striking down the 1979 reverse certification statute. A careful study of the present statute and the briefs filed herein has not persuaded me to depart from my earlier special concurring opinion dealing with this type of age/offense classification. See *State ex rel. Coats v. Johnson,* Okl.Cr., 597 P.2d 328 (1979). I believe the present statute continues to create an impermissible presumption having no rational connection to the juvenile's competency to stand trial as an adult. See *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

Of equally grave concern to me is that portion of 10 O.S.Supp.1979, § 1104.2 C, which sets forth guidelines for the court to consider in ruling on the juvenile's motion to be remanded to the children's court.[1] I

---

1. Title 10 O.S.Supp.1979, § 1104.2 C, sets forth the following guidelines to consider in ruling on the motion for certification as a child:

    "1. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

    "2. Whether the offense was against persons or property, greater weight being given for retaining the accused person within the adult criminal system for offenses against persons, especially if personal injury resulted;

have less concern over the enumerated guidelines than with the glaring omissions of that part of the statute. These guidelines omit considerations of (1) sophistication and maturity; (2) the likelihood of reasonable rehabilitation of the juvenile by the use of procedures and facilities currently available to the juvenile court; and (3) whether the offense occurred while the juvenile was escaping or in an escape status. Failure of the statute in allowing the trial court to consider these critically important factors is insufficient to provide an adequate hearing.

I am particularly disturbed that the trial court, after hearing the motion to certify as a child, is required only to conclude that it has considered each of the guidelines in reaching its decision. This fails to demonstrate that a full investigation has taken place, that the motion has received the careful and thorough consideration of the trial judge, and that the order contains findings of fact and conclusions of law set forth "with sufficient specificity to permit meaningful review." See *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). How can this Court discharge its appellate review responsibility when the statute only requires that the trial judge make such a general finding?

Furthermore, apprehension as to the constitutionality of the reverse certification statute has been demonstrated statewide since the adoption of the first such statute on October 1, 1978. Numerous prosecutors and judges have continued to proceed under the old certification law to avoid subsequent reversals and retrials of hundreds of cases in the future. Potentially, we have the same problem with the reverse certification statute that we had in *Edwards v. State*, Okl.Cr., 591 P.2d 313 (1979).[2]

Therefore, I respectfully dissent.

"3. The record and past history of the accused person, including previous contacts with law enforcement agencies and juvenile or criminal courts, prior periods of probation and commitments to juvenile institutions; and
"4. The prospects for adequate protection of the public if the accused person is processed through the juvenile system."

2. *Edwards v. State*, Okl.Cr., 591 P.2d 313 (1979), held that retrospective relief must be granted to those male persons who were prosecuted as adults without benefit of a certification hearing when they were between sixteen and eighteen years of age. Hundreds of post-conviction proceedings have been filed by many who claimed to have been victims of an unconstitutional conviction.