Y. C. SWITZER, Appellant,

v.

The CITY OF TULSA, Oklahoma, Appellee.

No. M–78–563.

Court of Criminal Appeals of Oklahoma.

July 19, 1979.

Ed Parks, Boyd & Parks, Tulsa, for appellant.

Waldo F. Bales, City Atty., Richard J. Kallsnick, Asst. City Atty., Tulsa, for appellee.

OPINION

CORNISH, Presiding Judge:

Y. C. Switzer, the appellant, was convicted in the Municipal Court of the City of Tulsa, Case No. 252237, for the offense of Loitering Where Gambling is Conducted, in violation of Tulsa, Okla.Rev.Ord., Title XXVII, ch. 8, § 203, and sentenced to pay a Twenty-Five Dollar ($25.00) fine and costs.

The pivotal issue before this Court is the constitutionality of the ordinance under which the appellant was convicted. This ordinance provides:

"It shall be an offense for any person to frequent or loiter in any place where

gaming or gambling is taking place or where any other provisions of this Chapter are being violated. Any person convicted of a violation of this Section shall be punished by a fine [of] not more than Fifty Dollars ($50.00), including costs." The appellant argues that this ordinance is an unconstitutional denial of due process of law because it is impermissibly vague.

■ There are essentially two independent reasons for the requirement of specificity in penal statutes. First, due process requires that citizens be afforded fair notice as to what conduct is forbidden. Secondly, explicit standards are necessary in order to prevent arbitrary arrests and convictions resting solely on the unfettered discretion of the police, judges and juries. *Papachristou v. Jacksonville*, 405 U.S. 156, 168, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

■ Statutes which create and provide penalties for criminal offenders should be sufficiently explicit so persons of common intelligence may understand their provisions and so that their meaning does not require speculation. See *Hayes v. Municipal Court of Oklahoma City*, Okl.Cr., 487 P.2d 974 (1971), and *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939). The appellant contends that the ordinance at issue is uncertain due to its use of ambiguous words, specifically "frequent or loiter" and "place."

The Oregon Court of Appeals in *State v. Debnam*, 23 Or.App. 433, 542 P.2d 939 (1975), invalidated an Oregon statute prohibiting loitering. That Court said at page 940:

" '[L]oitering' as a criterion of criminal conduct is an incomprehensible standard and

" ' * * * is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).' *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971)."

A city ordinance prohibiting vagrancy was struck down by the United States Supreme Court in *Papachristou v. Jacksonville*, supra. The ordinance provided in part that " 'persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served,' " (405 U.S. at 156, n. 1, 92 S.Ct. at 840) should be subject to punishment. None of the petitioners in *Papachristou* had been convicted under the gaming house clause, but the Supreme Court rejected the entire ordinance on its face, not just as applied to the petitioners in the case: "The Jacksonville ordinance cannot be squared with our constitutional standards and is plainly unconstitutional."

And in *Hayes v. Municipal Court of Oklahoma City*, supra, we declared unconstitutional an Oklahoma City ordinance prohibiting loitering in certain specified places during specified hours. We find the ordinance to be both vague and overbroad, stating:

"The clear weight of modern authority holds that legislation which makes it a crime to loiter, wander, stroll, or idle is unconstitutionally vague as failing to give fair notice of what is and what is not prohibited by their terms. As meaning is obscure they lack sufficient definiteness to provide an ascertainable standard for the determination of guilt. Thus such statutes which fail to give fair notice of what they prohibit are simply not valid laws.

\* \* \* \* \* \*

"[T]he Oklahoma City ordinance is unconstitutionally overbroad as it invades protected freedoms and punishes conduct which in no way impinges on the rights or interests of others. Loitering is in and of itself neither immoral [nor] anti-social. A prohibition against loitering is constitutionally infirm because it does not differentiate 'conduct calculated to harm and that which is essentially innocent.' *Ricks v. District of Columbia* [134 U.S.App.D.C. 201], 414 F.2d [1097] at 1104."

The parties are in apparent agreement that an ordinance criminalizing the mere act of "loitering" cannot be upheld as constitutional. However, relying on the so-called "New York Rule" and cases cited thereunder in an Annotation: "Validity of Loitering Statutes and Ordinances," 25 A.L. R.3d 836 (1969), the appellee contends that when the loitering requirement is coupled with another act that is criminally prohibited, then the ordinance becomes a valid legislative enactment.

The appellee argues that the ordinance should be regarded as a regulation concerning gambling, under 11 O.S.Supp.1978, § 22–108. That Section gives municipal governments the power to "suppress games and gambling houses." It is contended that the ordinance is saved from being unconstitutional by the fact that the proscription only applies to loitering in a specific place— that is, where gambling is taking place.

However, the ordinance leaves a number of questions unanswered. For instance, what determines the perimeter of the "place?" Does that connotation encompass public or private property? And what is the difference between loitering and being a spectator? If people are betting on a football game, is it a crime to be sitting beside them watching the game? If five people are watching a game of pool being played and two of them are wagering on the outcome, does that mean that the other three are loitering or can they just be waiting their turn at the table, or watching for entertainment? How many times must one go to a "place" before he can be considered to be "frequenting" it?

Just as a citizen cannot tell which acts are proscribed and which acts are permitted, so the police cannot tell whom to arrest and whom not to arrest. When they enter a "place" where gambling is being conducted, how are they to separate those who are "loitering" from those who are present for a lawful purpose? The ordinance requires no showing that the alleged offender knew or had reason to know of unlawful gaming or gambling activity, and no showing of any overt action or conduct. There is no saving clause which would apply to persons who are justified in some manner in standing idly around.

It is apparent that the terms "place," "loiter," and "frequent" are imprecise and escape uniform meaning. In our view, the ordinance is inadequate to delineate the class of human behavior which shall be subject to punishment. We, therefore, hold that the Tulsa ordinance which makes it a crime to frequent or loiter where gambling is being conducted is unconstitutionally vague. Because this issue is dispositive of the cause, we do not find it necessary to address the remaining grounds urged for reversal, and we so limit the scope of this opinion. Accordingly, the ordinance must be considered null and void and cannot support the conviction herein. The case is therefore *REVERSED* and *REMANDED* to the trial court with instructions to *DISMISS*.

BRETT and BUSSEY, JJ., concur.