**STATE of Oklahoma, Appellant,**

v.

**Gary KOO and Anthony Salvatore Jacene, Appellees.**

No. O–81–75.

Court of Criminal Appeals of Oklahoma.

June 16, 1982.

Rehearing Denied July 12, 1982.

Kay E. Huff, Dist. Atty., W. Frank Muret, First Asst. Dist. Atty., Twenty-First Judicial District, Norman, for appellant.

William E. Boswell, Jr., John M. Traw, Norman, for appellees.

## OPINION

BUSSEY, Judge:

The State has appealed under Rule 6 of the Rules of the Court of Criminal Appeals from an order of the magistrate sustaining demurrers to the Information in the cases of the *State of Oklahoma v. Salvatore Jacene*, CRF–80–300 and CRF–80–319, and the *State of Oklahoma v. Gary Koo*, CRF–80–322, CRF–80–325, CRF–80–326, CRF–80–333. The magistrate's decision was affirmed by a judge of the district court. All six cases were filed as separate appeals. However, upon application by the State all six cases were consolidated under one appeal, due to their similarity and, in an effort to deal with them more efficiently.

In each information the defendants were charged with the crime of commercial gambling. The information against Jacene in case number CRF–80–300 states:

For violation of 21 Oklahoma Statutes § 982(A–1)

COMMERCIAL GAMBLING

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, KAY E. HUFF, District Attorney, comes into Court and states upon this Affidavit that the above-named Defendant on or about the 5th day of October, 1979, at Tony J's Club, 2404 S. Classen, Norman, Cleveland County, State of Oklahoma, did unlawfully, wilfully and feloniously receive from Robert Sinor, a Norman police officer, at a gambling place, nine hundred dollars ($900.00) good and lawful currency of the United States of America, said currency being received from the said Robert Sinor to place a bet between the parties based on chance, to wit: the outcome of the Iowa, Carolina and Houston football games to be played

on the 6th day of September, 1979, and the outcome of the Buffalo, New England, Washington and Dallas professional football games to be played on the 7th day of September, 1979, ...

Copies of the information in CRF–80–319, CRF–80–322, CRF–80–325, CRF–80–326, CRF–80–333 appear in appendices form at the end of this opinion.[1]

In each case a demurrer to the information was filed and sustained by the same magistrate. The magistrate found that in each case, 1975 Okla.Sess.Laws, ch. 283, § 2, now 21 O.S.1981, § 982, specifically subsections A–1 and A–2 were unconstitutionally vague and indefinite. The magistrate further found that 1975 Okla.Sess.Laws, ch. 283, § 1, now 21 O.S.1981, § 981, subsection 4 which defines a "gambling place" to be unconstitutionally broad and vague. The magistrate also found the information to be so "duplicitous as to be unclear and uncertain as to the offense allegedly committed."

At the State's request, pursuant to a Rule 6 appeal, the matter was brought before a district court judge. The district court judge issued an "Order Affirming Magistrate" in each case. In making his decision the district judge found that 21 O.S.1981, § 982A–2 was the statute under which the defendant had been charged regardless of the fact that 21 O.S.1981, § 982A–1 had been specifically cited in the information. It was the district court judge's decision that 21 O.S.1981, § 982 was so broad in its scope and vague in its application that it was unconstitutional.

In order to determine the nature of an offense described in an information one must look to the charging part and its content. *Menifee v. Page*, 423 P.2d 478 (Okl. Cr.1967); *Raybourn v. State*, 339 P.2d 539 (Okl.Cr.1959). It is the opinion of this Court that the district court was correct in finding that the offense described in the body of each information stated an offense pursuant to 21 O.S.Supp.1980, § 982A–2, as opposed to § 982A–1.

Title 21 O.S.1981, § 982A, provides in pertinent part that:

1. See Appendix A.

A. Commercial Gambling is:

1. Operating or receiving all or part of the earnings of a gambling place:

2. *Receiving* or forwarding *bets* or offers to bet or, with intent to receive, record or forward bets, or offers to bet, possessing facilities to do so; [emphasis ours]

It is clear that in the charging part of each information the commercial gambling offense of "Receiving ... bets" was alleged. 21 O.S.1981, § 982A–2.

▆ The issue which remains is whether or not the commercial gambling offense of receiving bets is constitutional. Before specifically addressing each of the purported reasons for unconstitutionality, it should be noted that statutes are presumed constitutional and the persons alleging their unconstitutionality have the burden of proof. *Hilliary v. State*, 630 P.2d 791 (Okl.Cr.1981); *Williamson v. State*, 463 P.2d 1004 (Okl.Cr. 1969). Further, when reasonably possible, and within the bounds of legitimate construction, statutes should be construed so as to uphold their constitutionality. *Ex parte Arnett*, 93 Okl.Cr. 116, 225 P.2d 381 (1950).

The magistrate held and defendants argue that § 982A–2 is unconstitutionally vague. In justification for his ruling the magistrate stated that:

> ... it is impossible for a person of common understanding to know what, if any, activity is thereby prohibited.

The defendants argued that the statute is so vague that it does not give the accused fair notice of the "nature and cause" of the accusations against him as required by the Oklahoma Constitution, art. 2, § 20. The defendants further argue that the statute is so vague that it gives excessive discretion to police, judges and juries.

This Court recognizes, the requirement of specificity in penal statutes. In *Switzer v. City of Tulsa*, 598 P.2d 247 (Okl.Cr.1979), we stated that:

> ... There are essentially two independent reasons for the requirement of specificity in penal statutes. First, due process requires that citizens be afforded fair

notice as to what conduct is forbidden. Secondly, explicit standards are necessary in order to prevent arbitrary arrests and convictions resting solely on the unfettered discretion of the police, judges and juries. *Papachristou v. Jacksonville*, 405 U.S. 156, 168, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

Nevertheless, defendants must take upon themselves the burden of proof when alleging unconstitutionality. *Hilliary v. State*, supra.

In support of their vagueness theories, the defendants argue that it is impossible for a person to be able to tell in advance of what "receiving bets" consists. First it is argued that since the statute does not specifically require knowledge or intent that it is unclear as to under which circumstances the statute applies. It is this Court's opinion that the nature of this offense is such that it contains within its terms an averment of knowledge. See, *State v. Lisbon Sales Book Co.*, 176 Ohio 482, 200 N.E.2d 590 (1964). The contention that to be constitutional this statute must specifically state a requirement of knowledge, intent or guilty purpose is without merit.

Second, it is argued that failure of the legislature to define the term "receive" makes it impossible to determine whom to prosecute. However, it is the opinion of this Court that the term "receive" is clearly understood by all. It was not the intent of the statute to prosecute those who unknowingly or without criminal intent "receive" bets. We do not find any vagueness in the term "receive."

Third, it is argued that the term "bets" is not sufficiently defined because the statutory definition of the word "bet" which is found in § 981 part 1 is unclear. Title 21 O.S.1981, § 981 part 1 defines a bet as follows:

> 1. A "bet" is a bargain in which the parties agree that, dependent upon chance, or in which one of the parties to the transaction has valid reason to believe that it is dependent upon chance, one stands to win or lose something of value specified in the agreement. A bet does not include:

a. bona fide business transactions which are valid under the law of contracts including, but not limited to, contracts for the purchase of sale at a future date of securities or other commodities and agreements to compensation for loss caused by the happening of the chance including, but not limited to, contracts of indemnity or guaranty and life or death and accident insurance; or

b. any bingo game or a game of chance with comparable characteristics by or for participants conducted by an authorized nonprofit organization under the laws of this state pursuant to Title 21, Oklahoma Statutes, Sections 995.1 to 995.18; or

c. offers of purses, prizes or premiums to the actual participants in public and semipublic events, as follows, to wit: Rodeos, animal shows, expositions, fairs, athletic events, tournaments and other shows and contests where the participants qualify for a monetary prize or other recognition. This subparagraph further excepts an entry from the definition of "a bet" as applied to enumerated public and semipublic events.

Part of the ambiguity, the defendants argue, arises from the legislature's failure to define the word "chance." It is argued that football and baseball games are games of skill and not chance. While it is true that the outcome of certain activities are solely dependent upon skill and include no elements of chance, it would be an improper interpretation of the statute to say that it was void as it applied to football and baseball games because the participant exercised skill or a lack thereof in determining the outcome of a game. Any result over which a party to a bet does not have control can be considered to be chance. "While there is uncertainty, there is chance." *State v. Pinball Machines,* 404 P.2d 923 (Alaska 1965). The United States Supreme Court in *Public Clearing House v. Coyne,* 194 U.S. 497, 512, 24 S.Ct. 789, 48 L.Ed. 1092 (1904), described chance as follows:

[B]y the word chance, as defined by Webster, is meant something that befalls, as the result of unknown or unconsidered forces; the issue of uncertain conditions; an event not calculated upon; an unexpected occurrence; a happening; accident, fortuity, casualty.

See also, *People v. Monroe,* 349 Ill. 270, 182 N.E. 439, 85 A.L.R. 605 (1932). The fact that football and baseball are considered games of skill as exhibited by the players does not make them any less dependent upon chance when considered from the perspective of a person who makes or "receives bets." "What a man does not know and cannot find out is chance as to him, and is recognized as chance by the law." *Dillingham v. McLaughlin,* 264 U.S. 370, 373, 44 S.Ct. 362, 68 L.Ed. 742 (1924). Accordingly, we do not find the term "bet" or the term "chance" to be lacking in either specificity or clarity. Both are commonly understood words which are not unconstitutionally vague.

It is therefore the opinion of this Court that 21 O.S.1981, § 982A–2 which defines commercial gambling in part as "receiving bets" is not of itself unconstitutionally vague. Not only does the statutes give fair notice of the activity prohibited, it also contains sufficient guidelines for enforcement.

The district court judge in his Order Affirming Magistrate held that 21 O.S.1981, § 982A–2 was so broad in its scope and vague in its application that it was unconstitutional. Special emphasis was placed on *Rowell v. Smith,* 534 P.2d 689 (Okl.Cr.1975) and the courts belief that it was impossible to reconcile 21 O.S.1981, § 982A–2, with other gambling statutes already in existence such as 21 O.S.1981, §§ 942, 991.[2]

In *Rowell v. Smith,* supra, this Court faced with a conflict between 21 O.S.Supp. 1974, § 1733 and 21 O.S.1971, § 1713 stated:

We are of the opinion that to attempt to apply the statute [§ 1733] and harmonize

---

2. See Appendix B.

it with the other provisions of the penal code would be impossible since the statute is so broad in its scope and vague in its application.

This Court further stated in *Rowell v. Smith*, supra, that:

It is readily apparent from even the most cursory examination of the new statute, that a literal interpretation would by implication, repeal many prior statutes concerning larceny, robbery by fear, embezzlement, etc.

 It is this Court's opinion that the rationale used in *Rowell v. State*, supra, cannot be used with reference to the commercial gambling offense of receiving bets. A review of the other statutes which deal with gambling, reveals that gambling prohibitions had originally been couched in terms of specific gambling games which have been prohibited. 21 O.S.1981, §§ 941 et seq. The act of receiving bets has not, until enactment of 21 O.S.1981, § 982 been of itself and specifically a crime. Therefore, the commercial gambling offense of receiving bets does not in a broad manner repeal prior statutes concerning gambling.

Furthermore, defendants' arguments that the entire commercial gambling provisions conflict with previously enacted laws pertaining to gambling will not be considered by this Court. In *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the United States Supreme Court stated:

Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. [Citations omitted]. A clearly related principle is that constitutional rights are personal and may not be asserted vicariously. 413 U.S. at 610.

 Therefore, since defendants assert their constitutional rights as persons charged with a violation of the offense of receiving bets with regard to football and baseball games, they must show that the statute as applied to them is unconstitutional. Whereas, the other gambling statutes mentioned supra do not specify receiving bets on football or baseball games as a violation, we are of the opinion that the crime with which defendants were charged cannot be considered irreconcilable under the rationale of *Rowell v. Smith*, supra. Accordingly, the offense charged cannot be considered so broad in its scope and vague in its application as to be unconstitutional pursuant to *Rowell v. Smith*, supra.

 The defendants, in addition to attacking 21 O.S.1981, § 982 as unconstitutionally vague, also attack it as being unconstitutionally overbroad. As stated in *Profit v. City of Tulsa*, 574 P.2d 1053 (Okl. Cr.1978).

Over-breadth is the doctrine that a penal statute or ordinance may be held unconstitutional even when not vague if the area of conduct proscribed infringes upon constitutionally protected freedoms.

We cannot find that part of 21 O.S.1981, § 982, which defines "commercial gambling" as "receiving ... bets" to infringe upon any constitutionally protected freedoms. Therefore, we do not find the offense of receiving bets to be unconstitutionally overbroad.

Finally, the magistrate ruled and defendants assert that the informations were insufficient. In *Holloway v. State*, 602 P.2d 218 (Okl.Cr.1979), we held that:

A statement of the acts constituting the offense, in ordinary concise language, and in such manner as to enable a person of common understanding to know what is intended is all that is required by 22 O.S.1971, § 401.

\* \* \* \* \* \*

The test of the sufficiency of an information is whether the defendant was in fact misled by it and whether a conviction under it would expose the defendant to the possibility of subsequently being put in jeopardy a second time for the same offense.

While not a model to be followed, we find that the informations met the above standards and are therefore sufficient.

On the basis of the foregoing, the Order of the magistrate and the Order Affirming Magistrate issued in each case should be, and the same are hereby REVERSED and REMANDED for further proceeding not inconsistent with this opinion.

BRETT, P. J., concurs.

CORNISH, J., concurs in results.

### APPENDIX A

The information against Jacene in case number CRF–80–319 states:

For Violation of 21 Oklahoma Statutes 982(A–1) COMMERCIAL GAMBLING

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, KAY E. HUFF, District Attorney, comes into Court and states upon this Affidavit that the above-named Defendant on or about the 6th day of October, 1979, at 2404 S. Classen, Norman, Cleveland County, State of Oklahoma, did unlawfully, wilfully and feloniously receive from Robert Sinor, a Norman police officer, at a gambling place, four hundred fifty dollars ($450.00) good and lawful currency of the United States of America, said currency being received from the said Robert Sinor to place a bet between the parties based on chance, to wit: the outcome of the West Virginia, Kansas and U.C.L.A. college football games to be played on the 6th day of October, 1979,

The information against Koo in case number CRF–80–322 states:

For Violation of 21 Oklahoma Statutes 982(A–1) COMMERCIAL GAMBLING

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, KAY E. HUFF, District Attorney, comes into Court and states upon this Affidavit that the above-named Defendant on or about the 14th day of May, 1979, at Koo's Cafe, 319 E. Main, Norman, Cleveland County, State of Oklahoma, did unlawfully, wilfully and feloniously receive from Bill Rollins, a Norman

police officer, at a gambling place, twenty dollars ($20.00) good and lawful currency of the United States of America, said currency being received from the said Bill Rollins to place a bet between the parties based on chance, to wit: the outcome of the Texas/Baltimore baseball game and the Cincinnati/San Diego baseball game, said games to be played on the 14th day of May, 1979,

The information against Koo in case number CRF–80–325 states:

For Violation of 21 Oklahoma Statutes 982(A–1) COMMERCIAL GAMBLING

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, KAY E. HUFF, District Attorney, comes into Court and states upon this Affidavit that the above-named Defendant on or about the 23rd day of May, 1979, at Koo's Cafe, 319 E. Main, Norman, Cleveland County, State of Oklahoma, did unlawfully, wilfully and feloniously receive from Bill Rollins, a Norman police officer, at a gambling place, fifty dollars ($50.00) good and lawful currency of the United States of America, said currency being received from the said Bill Rollins to place a bet between the parties based on chance, to wit: the outcome of the Washington/Seattle baseball game played on the 24th day of May, 1979,

The information against Koo in case number CRF–80–326 states:

For Violation of 21 Oklahoma Statutes 982(A–1) COMMERCIAL GAMBLING

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, KAY E. HUFF, District Attorney, comes into Court and states upon this Affidavit that the above-named Defendant on or about the 15th day of May, 1979, at Koo's Cafe, 319 E. Main, Norman, Cleveland County, Oklahoma, did unlawfully, wilfully and feloniously receive from Bill Rollins, a Norman police officer, at a gambling place, ten dollars ($10.00) good and lawful currency of the United States of America, said currency being received from the said Bill Rollins

to place a bet between the parties based on chance, to wit: the outcome of the New York/Detroit baseball game and the California/Milwaukee baseball game, said games to be played on the 15th day of May, 1979,

The information against Koo in case number CRF–80–333 states:

For Violation of 21 Oklahoma Statutes § 982(A–1) COMMERCIAL GAMBLING IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, KAY E. HUFF, District Attorney, comes into Court and states upon this Affidavit that the above-named Defendant on or about the 11th day of May, 1979, at Koo's Cafe, 319 E. Main, Norman, Cleveland County, State of Oklahoma, did unlawfully, wilfully and feloniously receive from Bill Rollins, a Norman police officer, at a gambling place, fifty dollars ($50.00) good and lawful currency of the United States of America, said currency being received from the said Bill Rollins to place a bet between the parties based on chance, to wit: the outcome of the Seattle/Phoenix basketball game; the Washignton/San Antonio basketball game; and the Houston/Chicago baseball game, said games to be played on the 11th day of May, 1979,

APPENDIX B

Title 21 O.S.1981, § 942 reads as follows:

Any person who bets or plays at any of said prohibited games, or who shall bet or play at any games whatsoever, for money, property, checks, credits or other representatives of value with cards, dice or any other device which may be adapted to or used in playing any game of chance or in which chance is a material element, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars, nor more than one hundred dollars, or by imprisonment in the county jail for a term of not less than one day, nor more than thirty days, or by both such fine and imprisonment.

and, 21 O.S.1981, § 991 provides as follows:

It shall be unlawful for any person or persons or association of persons, corporation or corporations, to bet or wager by means of books, machines or any other devices, or to occupy any room, shed, tenement or building, or any part thereof, or to occupy any place upon any grounds with books, apparatus, or paraphernalia for the purpose of recording or registering bets or wagers or of selling pools, or making books or mutuals upon the result of any trial of speed or power of endurance of animals or beasts, or being the owner or lessee or occupant of any room, tent, tenement, shed, booth or building, or .part thereof at any place knowingly to permit the same to be used or occupied for any other such purposes, or therein to keep, exhibit, or employ any device or apparatus for the purpose of recording or registering such bets or wagers or the selling or making of such books, pools or mutuals, or to become the custodian or depository for gain, hire or reward of any money, property or thing of value, bet or wagered or to be wagered or bet contrary to the provisions of this act, or to receive, register, record, forward of purport or pretend to forward to or for any race course within or without this state, any money, thing or consideration of value offered for the purpose of being bet or wagered upon the speed or endurance of any animal or beast, or to occupy any place, or building or part thereof with books, papers, apparatus or paraphernalia for the purpose of receiving or pretending to receive or for recording or for registering or for forwarding or pretending or attempting to forward in any manner whatever, any money, thing or consideration of value, bet or wagered or to be bet or wagered by any person, or to receive or offer to receive any money, thing, or consideration of value bet or to be bet contrary to the provisions of this act, or to aid or assist or abet at any racetrack or place in any manner in any of the acts forbidden by this statute. That any person or persons or association

of persons, corporation or corporations violating the provisions of this act shall be fined not less than two hundred dollars nor more than five hundred dollars, one-fourth of which shall be paid to the informer, and be imprisoned not less than thirty days nor more than ninety days.

Although, not specifically referred to by the judge, 21 O.S.1981, § 941, upon which § 942, supra, relies, provides as follows:

Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device for money, checks, credits, or any representatives of value, or who either as owner or employee, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than five hundred dollars, nor more than two thousand dollars, and by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years.