The STATE of Oklahoma, Appellant,

v.

Tenisha HUNTER and Alan Darnell Walker, Appellee.

Nos. S-87-995, S-88-457.

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1990.

Thomas C. Gillert, Asst. Dist. Atty., Tulsa, Perry W. Newman, Asst. Dist. Atty., Bartlesville, for appellant.

Johnie O'Neal, Public Defender, Tulsa, for appellee Hunter.

## OPINION

LUMPKIN, Judge:

On December 1, 1987, in Tulsa County District Court, Case No. CRF-87-3490, and in Washington County District Court, Case

No. CRF–87–334, the Honorable Clifford Hopper, District Judge, and the Honorable Janice P. Dreiling, Associate District Judge, respectively declared the Delayed Sentencing Program for Young Adults, 22 O.S.Supp.1987, §§ 996–996.3, unconstitutional. The State appeals both rulings pursuant to the automatic appeal provisions of 22 O.S.1981, § 1053.1. The two separate appeals are consolidated herein for review. We declare the Delayed Sentencing Program for Young Adults constitutional and reverse and remand the cases for further proceedings.

On June 17, 1986, it was held in *Swart v. State*, 720 P.2d 1265, 1270–72 (Okl.Cr. 1986), that the Nonviolent Intermediate Offender Act [hereinafter cited as the NIOA or the Act], 22 O.S.Supp.1984, §§ 995–995.9 (repealed 1987), violated the separation of powers provision of article IV, section 1 of the Oklahoma Constitution. Specifically, *Swart* found two provisions of the NIOA violated the constitutional doctrine of separation of powers. First, 22 O.S.Supp.1984, § 995.8 improperly placed discretionary authority to discharge an offender from a lawful sentence in the hands of the judiciary contrary to article VI, section 10 of the Oklahoma Constitution which places such power exclusively with the Governor, upon recommendation from the Pardon and Parole Board. *Swart*, 720 P.2d at 1270–1271. Second, 22 O.S.Supp.1984, § 995.3(B) improperly delegated the power to establish the rules and conditions of probation to the Department of Corrections [hereinafter cited as DOC]. *Id.* at 1271–72. Following *Swart*, the Oklahoma Legislature repealed the NIOA and enacted the Delayed Sentencing Program for Young Adults [hereinafter cited as the DSPYA or the Program], 22 O.S.Supp.1989, §§ 996–996.3, effective November 1, 1987. Unlike the NIOA, *see Swart*, 720 P.2d at 1272, the DSPYA contained a severability clause. 1987 Okl. Sess.Laws 504.

In Tulsa County District Court, Case No. CRF–87–3490, District Judge Hopper, relying on the separation of powers rationale enunciated in *Swart* and the provisions of sections 996.1 and 996.3(A), declared the DSPYA unconstitutional. In Washington County District Court, Case No. CRF–87–334, Associate District Judge Dreiling held the DSPYA unconstitutional on equal protection grounds. We find the DSPYA is neither vague nor a denial of equal protection.

■ Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and it is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution. *Ex Parte Hunnicutt*, 7 Okla.Crim. 213, 123 P. 179, 183 (1912). Where a statute is subject to two constructions, one conforming to and the other contravening the Constitution, that construction which conforms to the Constitution must be adopted. *Id.* See also *State v. Koo*, 647 P.2d 889 (Okl.Cr.1982), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602; *Black v. Ball Janitorial Services, Inc.*, 730 P.2d 510 (Okl.1986).

■ We first analyze the DSPYA to determine if its provisions violate the separation of powers provision found in Okla. Const. art. IV, § 1. A review of the statutory provisions reveals that the Legislature applied the principles set forth in *Swart* and ensured that the power to sentence would remain with the trial court and that "the discretionary power to discharge an offender who is otherwise under a lawful sentence", *Swart* at 1270, is not delegated to another branch of government. The provisions of Section 996.3 retain the discretionary powers of the court to sentence pursuant to the sentencing options allowed by statute. The only procedural restriction is that the court must delay the sentencing "up to one hundred twenty (120) days" (emphasis added) and order the offender to the DSPYA to allow the DOC to "prepare and file with the court clerk a specialized offender accountability plan for said offender". This plan is in lieu of the presentence investigation which is required pursuant to 22 O.S.Supp.1982, § 982. In fact, the requirements of each of these provisions are substantially the same. To find one unconstitutional would ipso facto declare the other void. The statute requires

the DOC to act pursuant to the directions of the court. Therefore, the DSPYA does not violate the doctrine of separation of powers.

■ We now analyze the statutory language to determine if it is unconstitutionally vague under article II, section 7 of the Oklahoma Constitution. The concept of vagueness focuses on uncertainty or ambiguity of the terms of the legislation. The word "offender" is clearly defined in Section 996.1. The statute identifies the target group along with the criteria for selection. Section 996.3(C) succinctly states that the purpose for commitment to the DSPYA is for assessment. Section 996.2 assigns the administrative responsibility and Section 996.3(B) summarizes the purpose and expectations of the program. Section 996.3(B) states in pertinent part:

The plan shall include information, evaluation, and data directed by the sentencing court, and may include but not be limited to, the investigation report of probation officers, and assessment of security risks and offender needs and a recommended specific course of action, including, where applicable, psychological counseling, psychiatric treatment, medical treatment, education or vocational training, work, and such other programs, which will offer the best opportunity for rehabilitation of said offender.

In addition, we must distinguish between substantive due process and procedural due process in our analysis of the issues presented. Substantive "[d]ue process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, ..." Buckley v. Valeo, 424 U.S. 1, 77, 96 S.Ct. 612, 662, 46 L.Ed.2d 659, 721 (1976). However, the DSPYA statute neither defines crimes nor fixes punishment for failure to adhere to some requirement. It provides a procedure, which is invoked after guilt is established, to assess the offender and provide the Court with data upon which the sentence will be based. Prior to sentencing, selected offenders who have either plead guilty, nolo contendere or received a guilty verdict, are eligible for this program, which is in lieu of the presentence investigation. The sentencing court determines whether the offender will be confined in the custody of the Department of Corrections or be released on probation during the assessment period. The assessment period can vary for each offender, depending upon his needs. The offender is also given an opportunity to object to the recommendations of the plan before sentencing. This procedure follows the procedure established in 22 O.S.Supp.1982, § 982, wherein the DOC is also ordered to conduct a presentence investigation prior to sentencing any felon to incarceration. In Section 982 the investigation is followed by a report and recommendation to the sentencing court within a reasonable time. However, the DSPYA specialized offender accountability plan must be filed within 120 days unless the time period is extended by execution of a waiver by the offender and approved by the court. 22 O.S.Supp.1987, § 996.3(D). We do not find that this program arbitrarily or unreasonably curtails or interferes with an individual's life, liberty or property. The statute provides the offender with procedural due process at each stage of the proceedings. Nothing in the DSPYA prohibits an agreement by the parties to waive the provisions of the Program and proceed with the sentencing. Therefore, the DSPYA does not violate either substantive or procedural due process. Further, due process is not offended when the basis for enhanced confinement or dissimilar treatment is rehabilitation, and not punishment. Swart, 720 P.2d at 1269; Accord Rogers v. United States, 326 F.2d 56 (10th Cir.1963). This procedure allows the court flexibility in dealing with the youthful offender through programs such as "shock probation" or special conditions of probation to meet individual needs which might be identified by DOC in the specialized offender accountability plan filed with the court.

■ Finally, we address the issue of whether the DSPYA denies an "offender" equal protection of law, as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. The process for ana-

lyzing the constitutionality of a statute under the equal protection clause has previously been set out in *Swart.* 720 P.2d at 1268–1270. We adopt that analysis and apply it here. The DSPYA, like the NIOA, has a goal of rehabilitation of the offender. "That rehabilitation of youthful offenders is an important and legitimate state interest cannot be denied." *Swart,* 720 P.2d at 1269–1270. After applying the two tiered test defined in *Swart* we hold the DSPYA bears a rational relation to a legitimate state interest and is therefore constitutional in the application of the guarantees of the equal protection of law.

The DSPYA acknowledges and codifies the inherent power of the court to deal with individual offenders based on the particular needs of the person. It recognizes that it would be impossible for the Legislature to timely update a statutory listing of available programs for the courts to utilize in dealing with offenders, or even create a complete statutory listing of such programs which can be utilized as conditions of probation in sentencing. The DSPYA also provides the opportunity for the court to utilize "shock probation" by placing an offender in confinement custody with the DOC prior to sentencing, thus, allowing the court to individually tailor the sentence to the needs of the offender.

Therefore, the District Court rulings declaring 22 O.S.Supp.1989, §§ 996–996.3 unconstitutional are REVERSED AND REMANDED to the District Court for further proceedings consistent with this opinion.

LANE, V.P.J., and JOHNSON, J., concur.

PARKS, P.J., and BRETT, J., dissent.

PARKS, Presiding Judge, dissenting:

I respectfully dissent to the majority's disposition of this case. In the appellees' first proposition of error, appellate counsel argues, *inter alia,* that the 120–day program referred to in § 996.3(A) is unconstitutionally vague. I agree. "Undue vagueness in [a] statute will result in it being held unconstitutional, whether the uncer-

tainty goes to the persons within the scope of the statute, the conduct which is forbidden, or the punishment which may be imposed." W. LaFave & A. Scott, Jr., Substantive Criminal Law § 2.3(a), at 127 (1986) (footnotes omitted). For the following reasons, I find that the 120–day sentencing program of the DSPYA is unconstitutionally vague under Article II, § 7 of the Oklahoma Constitution which mandates that "[n]o person shall be deprived of ... liberty ... without due process of law."

The 120–day "program" referred to in § 996.3(A) is defined only by a single sentence in 22 O.S.Supp.1987, § 996.2, instructing the Department of Corrections to establish procedures to carry out the provisions of the DSPYA. Section 996.3(A) provides that the sentencing court:

shall delay sentencing for a period of up to one hundred twenty (120) days after the plea of guilty or finding of guilt is entered and order the offender to the Delayed Sentencing Program for Young Adults under the custody of the Department of Corrections. For purposes of the Delayed Sentencing Program for Young Adults, the term 'custody' shall include probation or confinement. The court may initially commit the offender for either probation or confinement pending the completion of the Delayed Sentencing Program.

However, as Judge Hopper found, the Oklahoma Legislature established "no guidelines whatsoever" as to what it meant by the 120–day program. (Tr. 8) I agree with appellate counsel that "the trial court is commanded to force a defendant to attend a lengthy program which neither the trial court nor the defendant can describe. The four month duration of the program is a significant deprivation of a defendant's liberty without sufficient notice to him of his responsibilities or possible requirements." Brief of Appellee, at 3.

I cannot glean from the statutes what programs are required for offenders ordered to complete the so-called delayed sentencing program, nor can I determine the rights and responsibilities of either the State or the offender. *See State ex rel.*

**868**

*Coats v. Johnson,* 597 P.2d 328, 330 (Okl. Cr.1979). "For this Court to determine what it thinks would be an acceptable pro[gram], would not be a matter of interpretation of the statute but would rather be an exercise in judicial legislation. We cannot rewrite the statute on the pretext of construction." *Id.* Defining crimes and fixing punishments is a legislative, not a judicial function. *See Salyers v. State,* 755 P.2d 97, 100 (Okl.Cr.1988); *Hunter v. State,* 375 P.2d 357, 362 (Okl.Cr.1962), *overruled on other grounds, Broome v. State,* 440 P.2d 761, 763 (Okl.Cr.1968); *United States v. Evans,* 333 U.S. 483, 487, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948). As strong as the presumption of validity may be, *see Ex Parte Hunnicutt,* 123 P. at 183, there are limits beyond which we cannot go in making certain what the Legislature "has left undefined or too vague for reasonable assurance of its meaning." *United States v. Evans,* 333 U.S. at 486, 68 S.Ct. at 636. The Legislature's failure to specify clear guidelines for what sentencing programs are required under § 996.3(A) "makes a task for us which at best could be only guesswork" and "[t]his is a task outside judicial interpretation." *Id.* at 495, 68 S.Ct. at 641.

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939) (footnote omitted). Due process requires explicit standards to prevent unfettered discretion in the administration of criminal justice. *See Switzer v. City of Tulsa,* 598 P.2d 247, 248 (Okl.Cr. 1979). "Statutes which create and provide penalties for criminal offenders should be sufficiently explicit so persons of common intelligence may understand their provisions and so that their meaning does not require speculation. *Id.* Accordingly, I would find that 22 O.S.Supp.1987, § 996.3(A), is void and without effect. *See* Okla. Const. art. II, § 7; *Johnson,* 597 P.2d at 330.

BRETT, Judge, dissenting:

I respectfully dissent to this decision and join with Judge PARKS in his written dissent.