2002 OK CR 34

**Gregory Kyle MALONE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–2000–1585.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 2002.

As Corrected Oct. 22, 2002.

Julie O'Connell, Office of the Public Defender, Tulsa, OK, for Appellant at Trial.

Larry Edwards, Assistant District Attorney, Tulsa, OK, for the State at Trial.

Paula J. Alfred, Stephen J. Greubel, Stuart W. Southerland, Assistant Public Defenders, Tulsa, OK, for Appellant on Appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Kellye Bates, Assistant Attorney General, Oklahoma City, OK, for the State on Appeal.

Robert A. Ravitz, Oklahoma County Public Defender, Oklahoma City, OK, James D. Bednar, Executive Director, Oklahoma Indigent Defense System, Norman, OK, Amicus.

---

**10.** Rule 13(b), Rules for the District Courts, 12 O.S.2001, ch. 2, app. 1.

**11.** 68 O.S.2001, § 2871(H).

### OPINION ON REHEARING

LUMPKIN, Presiding Judge:

¶1 Appellant, Gregory Kyle Malone, was tried by jury and convicted of First Degree Burglary (Count I), in violation of 21 O.S. 1991, § 1431, First Degree Rape (Count II), in violation of 21 O.S.1991, § 1114, and Sexual Battery (Count III), in violation of 21 O.S.Supp.1999, § 1123(B), all after former conviction of two or more felonies, in the District Court of Tulsa County, Case No. CF–99–6051. The jury set punishment at twenty (20) years imprisonment and a $10,000 fine on Count I, fifty (50) years imprisonment and a $10,000 fine on Count II, and (20) years imprisonment and a $10,000 fine on Count III. The trial judge, the Honorable Thomas C. Gillert, sentenced Appellant accordingly and ordered the sentences to be served consecutively.

¶2 Malone appealed to this Court, and raised one proposition of error. He was denied a fair sentencing proceeding when the trial court precluded the admission of mitigating evidence relevant to the jury's exercise of discretion. We rejected this claim in our Summary Opinion of March 18, 2002, and affirmed Appellant's convictions and sentences. The Summary Opinion adopted a new approach to the concept of allocution and the ability of a non-capital defendant to present mitigating and aggravating evidence in the sentencing stage of a bifurcated jury trial, after the jury's verdict. It also found that a trial court "has the power and is authorized to reject a jury's recommended sentence and modify the sentence upwards or downwards...." The Summary Opinion was thereafter published. *See Malone v. State,* 2002 OK CR 14.

¶3 Malone filed a Petition for Rehearing on April 8, 2002, pursuant to Rule 3.14(B)(2), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2002). Therein, he claimed we had overlooked a decisive question in the case. The Office of the Oklahoma County Public Defender simultaneously filed a "Motion to File Amicus Brief in Support of Rehearing." This Court granted rehearing in its order of June 5,

2002. In so doing, we granted the Public Defender's motion to file an amicus brief and invited the State to file one as well.[1]

¶4 Having further reviewed the issue at hand, the applicable authorities, and the additional briefs filed by Appellant, the State Attorney General, and the Oklahoma County Public Defender, **we hereby order that our Summary Opinion of March 18, 2002 is stricken, removed from publication, and superceded by this Opinion on Rehearing in its entirety,** including all matters pertinent to the issue Appellant raised in his original appeal.

¶5 Defendants in criminal trials deserve to have their day in court, to require the State to meet its burden of proof through evidence presented in open court, to tell their stories, and to defend themselves against the crimes of which they have been charged. The Oklahoma Legislature defines how and when defendants accomplish those purposes. In the instant case, Appellant was not denied a fair sentencing hearing by the trial judge's decision to preclude Appellant from presenting mitigating evidence to the jury at his non-capital sentencing proceeding.

¶6 Oklahoma's criminal statutes allow non-capital defendants, at the time of formal sentencing, to explain to the trial judge "any legal cause" they have why judgment should not be pronounced against them. 22 O.S. 2001, § 970. But 22 O.S.2001, § 971 qualifies the phrase "any legal cause" by giving specific grounds for such a showing of cause, i.e., insanity and those grounds that would support a motion for new trial in 22 O.S.2001, § 952. This appears to be a purely legal matter-except where there is the discovery of new evidence-and the full extent of "allocution" provided under Oklahoma law, except as set forth below.

¶7 22 O.S.2001, § 973 allows "either party" at the sentencing stage to raise "circumstances which may be properly taken into view, either in aggravation or mitigation of punishment," but only in those cases where the issue of punishment has been left

---

1. We want to compliment the parties and Amicus for providing the Court with insightful, professional analysis of the legal issues presented through their respective briefs.

to the judge. In all other cases, i.e., when the defendant has demanded the jury to assess punishment or the trial judge has allowed the jury to assess punishment, there simply is no provision allowing for mitigating evidence to be presented in the sentencing stage of the trial. This is a limitation enacted by our Legislature, and the limitation is undoubtedly constitutional.

¶ 8 Certain evidence that may be in fact "mitigating" or "aggravating" will inevitably be introduced throughout any trial, although that evidence is admitted to prove the elements of the crime, to support a legal defense, or to impeach a witness. A criminal defendant's story will in fact be told, by the witnesses he or she chooses and through his or her own testimony. But a criminal trial is not to be based upon so-called "character" evidence, and the same principle applies to sentencing proceedings.

### DECISION

¶ 9 The judgments and sentences are hereby **AFFIRMED.**

STRUBHAR and LILE, JJ.: concur.

JOHNSON, V.P.J.: concur in part/dissent in part.

CHAPEL, J.: dissent.

JOHNSON, V.P.J.: concurs in part/dissents in part.

¶ 1 I concur in the Court's Opinion on Rehearing as it relates to the affirmance of the conviction and the sentences imposed by the trial court. I respectfully dissent to the Opinion on Rehearing and the changes that have been made since the original summary opinion.

¶ 2 Some years ago, Judge James Lane, a former member of this Court, proposed that all trials be two-stage trials. His reasoning had to do with the fact that aggravating evidence could come in during a one-stage trial. A defendant could be found guilty based upon the aggravation and not for the charged crime. He pointed out that in a bench trial after the judgment of the court, the defendant has the right of allocution and

can present mitigating evidence to the court that the court can consider in the sentencing. This now seems reasonable. In the original summary opinion, as Judge Chapel points out in his dissent, Oklahoma law does not allow a trial judge to modify the jury's sentence. He notes this modification can only come in a bench trial. 22 O.S.1991, § 973.

¶ 3 After a jury sentence, justice demands that a defendant have a right to present mitigating evidence to the court. The State should also have the right to present any aggravating evidence. The court could get a pre-sentence report, and the judge has the right to modify the sentence or even increase the sentence. It is my hope that the legislature would enact a statute that would allow this procedure. If this were done, you would not need the two-stage trial as set forth in our original summary opinion. You would truly have allocution.

¶ 4 I am a great believer in the judicial system and the wisdom of judges who have been on the bench and heard numerous cases. With very few exceptions, their judgments are wise and the sentences given may be fairer than those of a jury who may be mad at the defendant or his or her attorney or something that has occurred in the case that makes the jury's sentence excessive. Hopefully the Legislature will cure this ill. This state should have a system where the jury finds guilt; the judges give the sentence after allocution.

CHAPEL, J., dissenting:

¶ 1 Malone filed an appeal raising one proposition of error—that the trial court precluded the admission of mitigating circumstances relevant to the jury's exercise of discretion. The issue presented is whether mitigating evidence should be presented, in non-capital felony trials, as a part of a criminal defendant's right to individualized jury sentencing. The majority opinion substituted here for this Court's original published opinion fails to answer that question. The opinion merely concludes that character evidence is not admissible in either guilt or

sentencing proceedings.[1] I would address the question and find Malone's right to individualized sentencing was violated. As no procedure currently allows criminal defendants the opportunity to exercise this right, I believe this Court is required to fashion such a procedure. After considering all the arguments submitted to the Court, I would adopt a second, sentencing, stage in non-capital felony proceedings, during which the jury may hear evidence in aggravation and mitigation of the crime, in order to assist in the determination of an appropriate individualized sentence.

¶ 2 As the State admits, the traditional practice of individualized sentencing in non-capital criminal cases is "conceptually favorable and well-grounded in notions of fairness and justice."[2] There is of course a qualitative difference between sentencing in non-capital and capital cases, where the constitution requires individual consideration of the characteristics of the defendant and the circumstances of the offense.[3] The United States Supreme Court discussed the historical use of individualized sentencing:

"[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind the extent of punishment to be imposed within limits fixed by law. Out-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and backgrounds of convicted offenders."[4]

In *Harmelin v. Michigan*[5] the Supreme Court reaffirmed the existence of the right to individualized sentencing in non-capital cases.[6]

¶ 3 Congress recognized the importance of individualized sentencing in adopting the federal sentencing guidelines.[7] One of Congress's goals in enacting the guidelines was to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities

---

1. This is not supported by the statutory language of the Evidence Code. The Code certainly prohibits aggravating and mitigating evidence from being used *during a first stage to secure a conviction*, since this type of evidence is not relevant to any criminal charges. However, the issue before the Court concerns *sentencing*, after a determination of guilt has been made. In sentencing, aggravating and mitigating evidence becomes relevant because it is material to the question of an appropriate sentence, and character evidence becomes an aid to the jury. The defendant is no longer prejudiced by introduction of this evidence because his guilt is established, and his previous acts and character are precisely what jurors are considering in determining an appropriate punishment.

2. Brief of Appellee in Response to This Court's Order Dated June 6, 2002, at 3.

3. *See, e.g., Eddings v. Oklahoma,* 455 U.S. 104, 111–12, 102 S.Ct. 869, 874–75, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 602–03, 98 S.Ct. 2954, 2963–64, 57 L.Ed.2d 973 (1978)(plurality opinion); *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976)(plurality opinion).

4. *Williams v. People of the State of N.Y.,* 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949).

5. 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).

6. Two Justices noted that, given the unique and irrevocable nature of the death penalty, the constitutional right to individualized sentencing was not present in non-capital cases. *Harmelin,* 501 U.S. at 995–96, 111 S.Ct. at 2701–02 (plurality opinion)(Scalia, Justice, joined by Chief Justice Rhenquist). Three Justices stated that the Eighth Amendment proportionality rule applies to non-capital cases, but limited the consideration of proportionality in most non-capital cases to analysis of the particular offense and offender, which requires consideration of individual characteristics in sentencing. *Harmelin,* 501 U.S. at 995–96, 111 S.Ct. at 2703 (Kennedy, Justice, concurring in part and concurring in the judgment, joined by Justices O'Connor and Souter). The remaining Justices argued for a broad application of the proportionality rule to non-capital cases. *Harmelin,* 501 U.S. at 1021, 111 S.Ct. at 2716 (White, Justice, dissenting)(joined by Justices Stevens and Blackmun)(Justice Marshall agreed but wrote separately to emphasize his conclusion that capital punishment is unconstitutional, 501 U.S. at 1027–28, 111 S.Ct. at 2719). *See also Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

7. 28 U.S.C. §§ 991–998.

among defendants with similar records ... while maintaining sufficient flexibility to permit individualized sentences." [8] In furtherance of this goal Congress set forth eleven factors the Sentencing Commission must consider in determining categories of defendants, including the offender's age, education, vocational skills, mental and emotional condition, physical condition (including drug dependence), previous employment record, family ties and responsibilities, community ties, role in the offense, criminal history, and degree of dependence upon crime for a livelihood. [9] Writing well after *Harmelin*, the United States Supreme Court noted that the Guidelines specifically incorporate a right to individualized sentencing, as the sentencing factors "speak to the offender's character, the nature or seriousness of the offense, or some other legitimate sentencing concern." [10]

¶4 This Court has not held there is no right to individualized sentencing in non-capital cases. We have noted that the determination of an appropriate individual sentence is a goal of the criminal justice system in capital and non-capital cases. [11] We have recognized the importance of individually tailoring sentences in the youthful offender context [12]. In *Applegate v. State*, [13] this Court found the defendant had waived his claim that he could not introduce mitigating evidence during the sentencing stage of a non-capital trial; however, we noted that there was no constitutional violation because the defendant had the opportunity to introduce mitigating evidence and did not. *Applegate* did not address the issue of a right to individualized sentencing not based in the constitution. However, the opinion impliedly recognizes such a right.

¶5 Contrary to the majority's claim, Oklahoma's current statutory scheme does not preclude recognition of a right to individualized sentencing, or prevent this Court from implementing a procedure to protect that right. In fact, the statutes read as a whole support the use of individualized sentencing in determining an appropriate sentence. There are three categories in which the Legislature has commented on second stages in criminal trials (or aggravating and mitigating evidence): (1) the capital murder statutes; (2) 22 O.S.2001, § 860.1, codifying the second-stage procedure for sentencing hearings in cases where prior offenses are alleged; and (3) the statutes governing judge sentencing. These three categories all represent instances where the Legislature addressed specific areas, often in response to court decisions. They do not represent exclusive expressions of legislative intent, but show how the Legislature works to resolve specific problems, which are presented to it within the context of general law. In briefing this issue, various parties have argued that the lack of any explicit statute granting the right to individualized sentencing signifies a legislative intent to prohibit the right. I disagree. As the United States Supreme Court has noted, "[n]ot every silence is pregnant." [14] In some cases, legislative "silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective." [15] That is the case here.

¶6 The death penalty statutes, and this Court's rulings interpreting those statutes, neither circumscribe nor prohibit a general recognition of the right to individualized sentencing, and an attempt to procedurally ad-

8. 28 U.S.C. § 991(b)(1).

9. 28 U.S.C. § 994(d)(1)-(11).

10. *Koon v. U.S.*, 518 U.S. 81, 91, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996). *See Burns v. U.S.*, 501 U.S. 129, 133–34, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991); *Mistretta v. U.S.*, 488 U.S. 361, 374, 109 S.Ct. 647, 656, 102 L.Ed.2d 714 (1989).

11. *Giles v. State*, No. F–91–44, slip op. at 6–7 (Okl.Cr. Jan. 11, 1993) (not for publication) (introduction in second stage of document showing

defendant's suspended sentence had been revoked provided the sentencing jury with valuable information).

12. *State v. Hunter*, 1990 OK CR 13, 787 P.2d 864, 867; *see* 22 O.S.2001, § 996.3 (Oklahoma Youthful Offender Act).

13. 1995 OK CR 49, 904 P.2d 130, 137.

14. *Burns v. U.S.*, 501 U.S. 129, 136, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991).

15. *Id.*

dress that right. The current capital statutes were initially enacted in direct response to the United States Supreme Court decisions in *Furman v. Georgia*[16] and *Gregg v. Georgia*,[17] and have been amended both by the Legislature and by this Court in response to further United States Supreme Court decisions. The capital statutes were designed to enact procedures which would meet the particular, and very complicated, requirements of capital cases. The fact that these statutes provide for aggravating and mitigating evidence in capital cases has no bearing on whether this evidence is appropriate in other sentencing contexts. In *McCormick v. State*[18] this Court held that a second stage, in which aggravating circumstances and mitigating evidence is presented, should only be conducted in capital cases. *McCormick* applies only to the specific crime of first degree murder, with its special sentencing scheme. It does not apply to other felonies, including other types of homicide; nor does it shed light on any legislative intent regarding non-capital felonies.

¶ 7 Section 860.1 was enacted as a direct response to *Harris v. State*,[19] in which this Court set forth the two-stage procedure later adopted by the Legislature. The Legislature enacted the statute allowing enhancement with prior convictions, 21 O.S.2001, § 51, without any procedure for implementing it. This Court suggested in several cases that the Legislature do so, but the Legislature failed to respond. Finally, in *Harris*, the Court explicitly discussed this problem and concluded that the Court not only had the authority but was compelled to set forth a procedure which would protect defendants' constitutional due process rights. For this reason § 860.1 cannot be read as any expansive statement of Legislative intent. It is narrowly drawn because it was a legislative

remedy for a narrow problem identified by this Court.

¶ 8 Three statutes govern judge sentencing procedures.[20] These statutes also address a narrow and unusual situation. Jury sentencing is the norm in Oklahoma. The Oklahoma constitution provides for unanimous jury sentencing in criminal felony cases. The statutes set forth various procedures for deliberations, verdict, etc., but provide no guidance regarding evidence to be presented in jury sentencing procedures beyond those generally governing the admissibility of evidence. Sections 973–975 were necessary to address the relatively rare instances where jurors do not recommend punishment. As the normal procedures could not apply under these circumstances, the Legislature had to specify procedures. These statutes carve out a judicial sentencing exception to the general rule of jury sentencing. The Legislature had to specifically delineate an entire process. In keeping with traditional statutory interpretation, I presume that the Legislature created this process by reflecting its understanding of common law jury practice, governed by the general statutes, and adapting it to judge sentencing situations.

¶ 9 The parties before this Court have argued that adoption of a second stage to allow for individualized sentencing usurps the legislative function. It does not. These arguments seem to assume that, as a matter of policy, unless the Legislature has explicitly required or promulgated a procedure, this Court has no ability to act. Understandably, no party offers a coherent explanation of this assumption. Rather, they appear to assume that courts cannot act unless a legislature has already commented on an issue by statute; that is, the legislature is the only legitimate source of law. This is not only incorrect, it is absurd. The state and federal

16.  408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

17.  428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

18.  1993 OK CR 6, 845 P.2d 896.

19.  1962 OK CR 15, 369 P.2d 187.

20.  22 O.S.2001, §§ 973–75. Section 973 allows aggravating and mitigating evidence where punishment is left to the trial court, either by guilty plea or because the jury fails to recommend punishment. Section 974 provides that the evidence shall be made through depositions or testimony in open court. Section 975 provides that *the court* may not receive aggravating or mitigating evidence bearing on punishment except as provided in §§ 973 and 974.

constitutions constitute a body of law superceding any legislation, and must be interpreted by the judicial, not legislative, branch. "It is emphatically the province and duty of the judicial department to say what the law is."[21] In addition, much of this country's law began as, and remains, common law, which is interpreted by the judiciary. Courts are authorized or required to promulgate rules and procedures implementing statutes or constitutional rights, even where the procedures have not been initially set forth by the legislative branch. Most courts are aware of and deferential to the legislature's role in enacting law. However, no court has taken that deference to such extremes that it has agreed to abdicate its authority to interpret and enforce questions of law. Such a legislation-oriented view of law misunderstands the roles of the legislative and judicial branches. It also appears to require the Legislature to enact specific laws for every eventuality. Traditional statutory interpretation begins by finding the statutes which cover a general area of law, then looking for any specific statutes covering a particular issue. In the absence of specific statutes, the general statutes apply. Here, in the absence of specific statutes authorizing a sentencing stage in felony cases, we should turn to the statutes governing general admissibility of evidence in criminal trials, plus the appropriate constitutional provisions. I believe the statutes support the right to individualized sentencing and do not preclude adoption of a procedure to implement that right. I would do so. I dissent.

**21.** *Marbury v. Madison,* 1 Cranch 137, 5 U.S.   137, 2 L.Ed. 60 (1803).